[No. B171524. Second Dist., Div. Two. Nov. 3, 2004.]

THE PEOPLE, Plaintiff and Appellant, v.
EFREN MIRANDA, Defendant and Respondent.

## COUNSEL

Steve Cooley, District Attorney, Patrick D. Moran, Victor M. Minjares and Brent Riggs, Deputy District Attorneys, for Plaintiff and Appellant.

Hedding Law Firm and Ronald D. Hedding for Defendant and Respondent.

## OPINION

**DOI TODD, J.**—Respondent Efren Miranda was granted probation in 1997 upon his entry of a negotiated plea of guilty to receiving stolen property, a felony (Pen. Code, § 496, subd. (a)).[1] He abandoned probation and fled the jurisdiction shortly thereafter. In 2003, he appeared in court and filed a motion to withdraw his plea pursuant to section 1018.[2] The trial court granted the motion. The People appeal.

█ We consider whether a trial court has jurisdiction to grant a defendant's motion to withdraw his guilty plea pursuant to section 1018 when the motion is not made within six months after the defendant has been granted probation, as required by that section. We hold that a trial court does not have jurisdiction to grant such a motion after the six-month period has passed.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The case was originally filed against "Alejandro Rojas." At the time respondent filed the motion to withdraw his plea, he revealed his true name.

## FACTS AND PROCEDURAL BACKGROUND

In January 1997, respondent was charged by information with receiving stolen property, a felony. He was represented by retained counsel during his preliminary hearing and at his arraignment. After he failed to appear and a bench warrant was issued, he subsequently appeared with a different retained attorney, who filed a written motion to set aside the information pursuant to section 995. On April 15, 1997, after the section 995 motion was argued, respondent entered a negotiated plea of guilty to the charged offense. The terms of the plea bargain provided that respondent would be placed on probation and would receive credit for one day served in custody, and that he would not be required to serve any additional time.

At the time respondent entered his guilty plea, the prosecutor, with the assistance of a Spanish-speaking interpreter,[3] advised respondent of the immigration consequences of his plea as follows: "If you are not a citizen of the United States, pleading guilty to this charge could have the result that you would be deported from this country, denied reentry back into this country or denied citizenship if you applied. [¶] You understand what I have told you?" Respondent replied, "Yes." In addition, respondent initialed a printed plea form that stated, "I understand that if I am not a citizen of the United States, the conviction for the offense charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." In court, respondent acknowledged his signature and initials on the form and stated that the document had been translated from English into Spanish, that he had discussed it with his attorney, and that he understood what it said. The prosecutor asked respondent whether, apart from the sentence agreement, anyone had made any promises to induce the guilty plea, and respondent answered, "No."[4]

On May 14, 1997, entry of judgment was suspended and respondent was placed on felony probation for three years in accordance with the agreed-upon terms. Among the conditions of probation were that he seek and maintain training, schooling or employment as approved by the probation officer; keep the probation officer advised of his current address at all times; and obey all laws, orders, rules, and regulations of the probation department and the court.

---

[3] Respondent's counsel stated, "He [respondent] speaks English, but I am more comfortable with an interpreter."

[4] Defense counsel explained to respondent that if he did well on probation, the trial court might entertain a motion to reduce the charge to a misdemeanor, but that there was no promise this would occur.

Respondent reported to the probation department four times, the last time on August 7, 1997. At that point he had paid $57 of the $1,863 levied in fines, fees, and probationary costs, including a $200 restitution fine. Sometime in late 1997, respondent moved from Los Angeles County to Laredo, Texas, although, by his own admission, he had failed to obtain permission from his probation officer. A probation report was filed in December 1999, indicating that respondent had deserted and requesting revocation of probation. In January 2000, his probation was summarily revoked and a bench warrant was issued.

Apparently as a result of the outstanding bench warrant, respondent was detained by the United States Customs Service when his private jet landed in Laredo, Texas, in February 2003. He then contacted counsel and returned to Los Angeles. Respondent appeared in court on May 30, 2003, represented by new counsel, and filed a notice of motion to withdraw his plea. On August 15, 2003, he filed a motion "to set aside the Judgment (order granting probation) for the purpose of moving the Court to vacate [his] guilty plea," citing *People v. Superior Court (Giron)* (1974) 11 Cal.3d 793 [114 Cal.Rptr. 596, 523 P.2d 636] for the proposition that the trial court had jurisdiction to permit withdrawal of the plea under section 1018.

In his motion, respondent explained that he "had to move [to Texas] in order to make a living." He stated that he was not guilty of receiving stolen property, providing a lengthy rendition of the facts surrounding the charged offense, and he alleged that his guilty plea was involuntary because of incompetent advice from counsel. He claimed that he had been denied the effective assistance of counsel in that he was misadvised by his first lawyer that his guilty plea would have no adverse consequences on his immigration status, and that his second lawyer told him the same thing. Respondent, who stated that he was a lawful permanent resident of this country and a successful business owner, claimed that he spoke "very poor English and underst[oo]d even less." He stated that he has been told that as a result of the plea he is subject to immediate deportation and is disqualified from obtaining citizenship. He stated that he would not have pled guilty if he had known that a guilty plea would actually or potentially subject him to deportation or prevent him from becoming a United States citizen. He asserted that although he read the written waiver form at the time of his guilty plea, he believed that the form and the questions posed by the prosecutor were "a mere formality" and in the courtroom he "did not pay a great deal of attention when [he] acknowledged the consequences, as [he] felt [he] had already obligated [himself] by signing the written waiver form which [he] did not understand at all." He claimed that the waiver form was not read to him in Spanish.

The People did not file a written opposition. In opposing the motion at the hearing, the prosecutor argued that respondent failed to establish that he

received ineffective assistance and that the record did not establish his factual innocence. The prosecutor further argued that respondent had had an interpreter, had signed the plea form, and knew the consequences of his plea. The prosecutor stated, "I don't think [respondent] has legally satisfied the requirement for setting aside a plea that's close to seven years old where he . . . didn't even satisfactorily complete probation." The prosecutor did not, however, argue that the motion was untimely or that the trial court lacked jurisdiction to entertain the motion.

On October 17, 2003, the trial court granted the motion to set aside the judgment and vacated the guilty plea. The court stated, "The court can initially find without any question that the defendant was not properly advised of his rights, because we all made mistakes in those days. We all, including the court, operated under the assumption that this 'may' have adverse consequences with respect to your immigration status. The approved form said that." The court stated that there was a strong inference of incompetent representation by respondent's first retained counsel, "simply based on his record and his run-ins with the bar," and it stated that it was "inclined to accept [respondent's] assertions that [this] lawyer assured him under no circumstances this would have any adverse affect on [his] immigration status." The court found that it would not, therefore, have expected respondent to have raised the issue with his second attorney, since the first attorney had assured him there would be no problem. The court concluded that there was "more than a reasonable probability that there would have been a favorable resolution to this case had the matter been [*sic*] proceeded to trial. [¶] This is not that strong of a case." The matter was thereafter set for trial.

## DISCUSSION

Section 1018 provides, in pertinent part, as follows: "On application of the defendant at any time before judgment *or within six months after an order granting probation is made if entry of judgment is suspended,* the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." (Italics added.)[5]

The People contend that the trial court acted without jurisdiction when it permitted respondent to withdraw his guilty plea pursuant to section 1018,

---

[5] Additional portions of section 1018, not quoted here, provide for the entry of a guilty plea by a defendant and its acceptance by a court under various circumstances, including where the defendant is not represented by counsel.

because the motion was made more than five years past the statutory period in which a motion to withdraw a plea after a grant of probation must be brought.

■ Respondent argues that the People have waived the issue of the court's jurisdiction to consider a motion brought after the six-month limit because the prosecutor failed to object on that ground in the trial court. However, it is well established that appellate courts may rely on a theory presented for the first time on appeal " 'where the issue is one of law alone.' " (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 195 [96 Cal.Rptr.2d 463, 999 P.2d 686].) For example, in *People v. Carr* (1974) 43 Cal.App.3d 441, 444 [117 Cal.Rptr. 714], the court permitted the defendant to raise a theory on appeal, the applicability of section 1203.2a, that had not been raised in the trial court. The court stated that although the argument presented by the defendant was "a new theory, it is one involving only a question of law, i.e., the applicability of a statute to conceded facts. [Citation.] If a question of law only is presented on the facts appearing in the record, the change in theory may be permitted by the reviewing court. [Citation.]" (*People v. Carr, supra,* at pp. 444–445.)

Accordingly, since this issue is one of law alone, we will address the People's argument.

■ Section 1018 was amended in 1991 to add the language italicized above, that is, to provide that a court may permit withdrawal of a guilty plea for good cause "within six months after an order granting probation is made if entry of judgment is suspended." (Stats. 1991, ch. 421, § 1, p. 2172.) ■ We must determine whether this time limitation is directory or mandatory, which "simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606].) If a procedural requirement is mandatory, the failure to comply with the requirement invalidates the action. (*Id.* at p. 909.)

"There is no simple test to determine whether a statutory requirement is mandatory or directory. [Citation.] As in all cases of statutory interpretation, the court ' "must ascertain the legislative intent. . . ." ' . . . [¶] Concerning statutory *time* limitations in particular, however, our Supreme Court has recognized a general rule that '. . . requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed. [Citations.] In ascertaining probable intent, California courts have expressed a variety of tests. In some cases focus has been directed at the likely consequences of holding a

particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.] Other cases have suggested that a time limitation is deemed merely directory "unless a consequence or penalty is provided for failure to do the act within the time commanded." [Citations.]' [Citations.]" (*People v. Williams* (1999) 77 Cal.App.4th 436, 448 [92 Cal.Rptr.2d 1].)

■ We first look at the statutory language "as the most reliable indicator of legislative intent." (*People v. Holmes* (2004) 32 Cal.4th 432, 438 [9 Cal.Rptr.3d 678, 84 P.3d 366].) The statute provides that a trial court may permit withdrawal of a plea at any time before judgment, or within six months after an order granting probation is made if entry of judgment is suspended. Under the plain language of the amendment, it appears that a trial court has no authority to entertain a motion to withdraw a plea brought after the six-month period following the grant of probation where, as here, imposition of judgment was suspended.

■ Since, however, the statutory language does not establish whether the time limitation is mandatory or directory, we examine the legislative history of the amendment. (See *People v. Holmes, supra,* 32 Cal.4th at p. 439.) We take judicial notice of the legislative history of the amending legislation to ascertain the purpose of the amendment. (*People v. Muszynski* (2002) 100 Cal.App.4th 672, 681, fn. 15 [122 Cal.Rptr.2d 764]; *Post v. Prati* (1979) 90 Cal.App.3d 626, 634 [153 Cal.Rptr. 511].)

As originally introduced, the proposed legislation would have required that a motion to withdraw a guilty plea be brought before an order granting probation was made, whether or not judgment was entered. According to the bill's author, the purpose of the bill was as follows: "Defendants who have already received the benefit of probation should not be entitled to greater rights to withdraw their guilty pleas than other defendants who are sentenced to state prison. The purpose of this bill is to prevent defendants from making motions to withdraw their pleas after probation has been granted." (Assem. Com. on Public Safety, analysis of Assem. Bill No. 2174 (1991–1992 Reg. Sess.) as introduced Mar. 8, 1991.) The legislation was amended to provide that a defendant could bring a motion to withdraw a guilty plea within six months after the order granting probation where entry of judgment was suspended. The report of the Senate Committee on Judiciary on the amended bill indicated that "[t]he purpose of this bill is to eliminate late withdrawal of pleas and the resultant jeopardy to the prosecution caused by the passage of time." (Sen. Com. on Judiciary, analysis of Assem. Bill No. 2174 (1991–1992 Reg. Sess.) as amended May 30, 1991.)

The enrolled bill report stated as follows: "The purpose of this bill is to eliminate late withdrawal of pleas which often prejudices the prosecution

because of the passage of time. When a defendant is sentenced to state prison, entry of judgment occurs a short time after the defendant pleads guilty. Thus, there is a very limited time in which to request a change of plea. However, if entry of judgment is suspended, and the defendant is placed on probation, he/she is entitled to apply to withdraw the guilty plea at any time. [¶] The Attorney General states that 'defendants who have already received the benefit of probation should not be entitled to greater rights to withdraw their guilty pleas than other defendants who are sentenced to state prison.' Also, a lengthy delay after the original plea of guilty may result in missing witnesses, faulty recollections, and other problems in bringing the case to trial." (Off. of Criminal Justice Planning, Enrolled Bill Rep. on Assem. Bill No. 2174 (1991–1992 Reg. Sess.) Sept. 5, 1991.)

The bill's author, writing to the governor to urge his approval, stated, "Assembly Bill 2174 would provide that a court may not permit the withdrawal of a guilty plea more than six months after the entry of an order granting probation. [¶] Under Penal Code section 1018 a motion to withdraw guilty pleas may be made anytime before the trial court imposes a judgment and sentence. Thus, in the typical case, a defendant's right to make a motion to withdraw their [*sic*] guilty plea ends when the court imposes a prison sentence. However, in those cases where the court grants probation, there has technically not yet been a judgment or sentence. Thus, years after the events, when witnesses have died, moved or forgotten details, the defendant can still make a motion to withdraw their [*sic*] guilty plea." (Letter from Assembly-member Paula Boland to Governor Pete Wilson, Aug. 29, 1991.)

In *People v. Totari* (2003) 111 Cal.App.4th 1202 [4 Cal.Rptr.3d 613], the court recognized that the amendment was intended to place a limit on the time in which a defendant may bring a motion to withdraw a guilty plea after a grant of probation. The court stated, "Indeed, the Legislature's 1991 amendment of Penal Code section 1018 verified that it intended for the rules governing writs of *coram nobis* to govern motions to vacate brought under Penal Code section 1016.5 [for failure to advise of immigration conse-quences] *after the expiration of the strict time limits in Penal Code section 1018.*"[6] (*People v. Totari, supra,* at p. 1206, fn. omitted, second italics added.)

---

[6] In *People v. Castaneda* (1995) 37 Cal.App.4th 1612 [44 Cal.Rptr.2d 666], the court observed that "[a]lthough section 1018 is limited on its face to the period before judgment, the courts have long permitted defendants to move to set aside the judgment as a means of allowing the defendant to withdraw the guilty plea after judgment. [Citations.]" (*Id.* at p. 1617.) The court further stated, "[A] motion to vacate the judgment is recognized as equivalent to a petition for the common law remedy of a writ of error *coram nobis.* [Citations.]" (*Id.* at p. 1618; accord, *People v. Totari* (2002) 28 Cal.4th 876, 885, fn. 4 [123 Cal.Rptr.2d 76, 50 P.3d 781].) It is well established that *coram nobis* does not lie for a claim of ineffective assistance of counsel. (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 982–983 [92

■ It is clear that a determination that the six-month time limitation is mandatory would promote the purpose of the enactment. (See *People v. Williams, supra,* 77 Cal.App.4th at p. 448.) "[W]here a statutory requirement is designed to make proceedings orderly, systematic, and speedy and the failure to comply does not injure the interested party, the requirement is generally deemed directory. Conversely, where a requirement is designed to protect an individual and the failure to comply might harm the individual, the requirement is generally mandatory." (*Id.* at p. 449.) In *Williams,* the court determined that the purpose of the statutory requirement at issue there was to protect the public. (*Id.* at p. 451.) Here, the amendment providing the six-month period was plainly enacted to protect the People's ability to prosecute cases by limiting the ability of a defendant to obtain withdrawal of his guilty plea long after entry of that plea. Although there is no provision for a penalty or consequence for noncompliance, which might otherwise indicate that the time limitation is merely directory, in view of the fundamental and sole stated purpose for the amendment, the time limitation must be deemed mandatory. To read the statute otherwise would obviate the purpose of the amendment.

Respondent points to the concluding words in section 1018, "This section shall be liberally construed to effect these objects and to promote justice." He argues that since the plain language gives the trial court discretion to construe the statute liberally to promote justice, the time limitation added by the 1991 amendment may be so construed in his favor.

■ We do not agree that this portion of the statute assists respondent with respect to the six-month limitation at issue. The statute is to "be liberally construed to effect these objects" as well as "to promote justice." The object of the amendment is to prevent prejudice to the People by virtue of the passage of time if a defendant is permitted to withdraw his plea. Permitting a trial court to disregard the provision would not "effect [this] object[]." In view of the stated purpose of the amendment to section 1018 limiting such motions to a period of six months following a grant of probation—that is, to

---

Cal.Rptr.2d 161].) A statutory motion pursuant to section 1016.5 to vacate the judgment and withdraw the guilty plea may be brought where the failure consists of the omission of advisements about the immigration consequences of the plea; section 1016.5 "contains no time bar." (*People v. Superior Court (Zamudio), supra,* 23 Cal.4th at pp. 191, 204.) The existence of such remedies does not suggest that the time limits of section 1018 may be ignored. (See *People v. Totari, supra,* 111 Cal.App.4th at p. 1206 ["The 'normal rules' for withdrawal of a plea, *when the strict time limits set forth in Penal Code section 1018 have expired,* are identical to the rules for obtaining a writ of *coram nobis*" (first italics added)].)

Since the above-mentioned motions were not brought in this case, we express no view as to the applicability of, or availability of relief under, these motions with respect to appellant's claim.

prevent prejudice to the People—we do not believe that the six-month period should be deemed subject to waiver by the parties or the trial court under the liberal construction clause.

The trial court lacked jurisdiction to consider and grant respondent's motion to vacate his guilty plea. The ruling setting aside the judgment and vacating the guilty plea must be reversed, and the matter must be remanded to the trial court for appropriate proceedings on the probation violation allegation. The issue of ineffective assistance of counsel may be raised, in accordance with established rules, by petition for writ of habeas corpus in the trial court. (*People v. Gallardo, supra,* 77 Cal.App.4th at p. 983; see *In re Resendiz* (2001) 25 Cal.4th 230, 248 [105 Cal.Rptr.2d 431, 19 P.3d 1171].) We express no opinion on the appropriate disposition of such a petition.[7]

## DISPOSITION

The order setting aside the judgment and vacating the guilty plea is reversed and the matter is remanded to the trial court for further proceedings in accordance with the views set forth herein.

Boren, P. J., and Ashmann-Gerst, J., concurred.

---

[7] We do not address the availability of habeas corpus relief here because the issue was not raised by way of petition for writ of habeas corpus in the trial court, and consequently the People have not had an opportunity to respond appropriately.