[No. B205679. Second Dist., Div. Eight. May 28, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR VASILYAN, Defendant and Appellant.

## Counsel

Asherson Klein & Darbinian, Neville Asherson, Leon B. Hazany and Anish Vashistha for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and A. Scott Hayward, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FLIER, J.**—Appellant Arthur Vasilyan was charged by the Los Angeles County District Attorney in 1994 with three counts of a violation of Penal Code section 422.7 (section 422.7). He pleaded nolo contendere to two counts; the third count was dismissed. Appellant was placed on probation on the conditions that he would serve 39 days in county jail, pay a fine, and Serve 80 hours of community service. No appeal was taken from the judgment of conviction.

On June 21, 2007, appellant, through his counsel, filed a motion to vacate the judgment and for leave to withdraw his guilty plea. Alternatively, the motion sought relief in terms of petitions for writs of *coram nobis*, habeas corpus, and *audita querela*. In large part, the motion relied on *People v. Wallace* (2003) 109 Cal.App.4th 1699 [1 Cal.Rptr.3d 324] (*Wallace*), which held that section 422.7 is only a penalty provision; we set forth the entirety of section 422.7 in the margin.[1] An amended motion, much to the same effect as the original motion, was filed on December 7, 2007. The motion was denied. This appeal is from the denial of the motion entered on December 12, 2007. We agree with appellant that the judgment entered in 1994 is void. We vacate appellant's plea of nolo contendere and remand with directions to amend or dismiss the information, as appears appropriate.

## FACTS

1. *The Facts Underlying the Plea of Nolo Contendere*

Our summary of the facts is based on the transcript of the preliminary hearing held on September 12, 1994.

Kiger Hansen and his friend Jason Bane were on Santa Monica Boulevard in Los Angeles when, at approximately 2:00 a.m. on August 28, 1994, a

---

[1] In 1994, then section 422.7 stated: "Except in the case of a person punished under Section 422.6, any crime which is not made punishable by imprisonment in the state prison shall be punishable by imprisonment in the state prison or in a county jail not to exceed one year, by a fine not to exceed ten thousand dollars ($10,000), or by both that imprisonment and fine, if the crime is committed against the person or property of another for the purpose of intimidating or interfering with that other person's free exercise or enjoyment of any right secured to him or her by the constitution or laws of this state or by the Constitution or laws of the United States and because of the other person's race, color, religion, ancestry, national origin, disability, gender, or sexual orientation, under any of the following circumstances, which shall be charged in the accusatory pleading: [¶] (a) The crime against the person of another either includes the present ability to commit a violent injury or causes actual physical injury. [¶] (b) The crime against property causes damage in excess of five hundred dollars ($500). [¶] (c) The person charged with a crime under this section has been convicted previously of a violation of subdivision (a) or (b) of Section 422.6, or has been convicted previously of a conspiracy to commit a crime described in subdivision (a) or (b) of Section 422.6." (Italics omitted.)

group of four or five men began abusing them verbally by calling them "fags" and physically attacked Hansen and Bane. Hansen was hit on the jaw, knocking a tooth loose, and he was also hit on the side of his head. Hansen identified appellant as one of the men who beat Bane. All five attackers continued to yell outrageous taunts intended to demean Hansen and Bane. They also challenged Hansen and Bane to fight, but the two men managed to get away.

Appellant and his cohorts were almost immediately arrested; the attack took place at what Hanson testified was a "hot spot" with a lot of people about and a Los Angeles County Sheriff's Department station across the street. Hansen and Bane identified their attackers within 15 minutes of the attack.

## 2. The Consequences of the Plea of Nolo Contendere

Appellant was 20 years old in August 1994. He was represented by retained counsel in the proceedings that led to his pleas. One of his contentions in support of the motion to vacate the judgment is that his counsel did not advise him of the immigration law consequences of his pleas.

Appellant currently resides in Yerevan City in Armenia. He entered the United States in 1988 with his family and became lawfully a permanent resident. He was deported in 2004 because of the pleas of nolo contendere in 1994. According to a declaration by an immigration law specialist submitted in support of the motion to vacate the judgment, his pleas in 1994 subjected appellant to three immigration law consequences. They are deportation, exclusion from admission to the United States, and denial of naturalization as a United States citizen.

## DISCUSSION

## 1. Wallace, supra, *109 Cal.App.4th 1699*

In *Wallace, supra,* 109 Cal.App.4th 1699, 1701–1702, the defendant was charged with assault, robbery and battery. It was also alleged that the crimes were hate crimes in terms of Penal Code section 422.75 and that the assault and robbery charges constituted serious felonies for purposes of sentence enhancement. Pursuant to a negotiated disposition, the prosecution amended the information to allege a violation of section 422.7. The defendant pleaded nolo contendere to this charge, in exchange for which the remaining counts were dismissed; the defendant did not plead to any other charge or charges. The sentence was suspended, the defendant was placed on felony probation for three years, and he served 60 days in county jail. Unlike in the case

before us, the defendant appealed from the judgment, contending that section 422.7 "is merely a penalty provision for which he cannot be punished in the absence of a conviction on a related substantive offense." (*Wallace, supra*, 109 Cal.App.4th at p. 1701.)

■ After noting that in *In re M.S.* (1995) 10 Cal.4th 698, 725 [42 Cal.Rptr.2d 355, 896 P.2d 1365], the California Supreme Court characterized section 422.7 as a penalty enhancement provision (*Wallace, supra*, 109 Cal.App.4th at p. 1702), the *Wallace* court found that section 422.7 does not "identify any particular substantive crime" but rather elevates certain crimes from misdemeanors to felonies, which makes section 422.7 "plainly a penalty provision." (*Wallace*, at pp. 1702–1703.) The court went on to analyze section 422.7 from perspectives that we need not repeat here; suffice it to say that this analysis only confirmed the conclusion that section 422.7 is a penalty provision and that section 422.7 does not identify or establish a substantive crime.

■ The court then turned to the question of the appropriate remedy. We set forth this part of the court's opinion in full: "Having concluded that section 422.7 is a penalty provision, we now turn to the question of the appropriate remedy to be applied. Wallace contends that his conviction should be reduced to a misdemeanor violation of section 422.6. The People, by contrast, assert that Wallace's conviction and sentence should be affirmed because his plea was knowing, voluntary and intelligent. Neither position is persuasive. First, Wallace is not entitled to have his conviction reduced to a misdemeanor because his sentence reflects his understanding that he was pleading to a felony. As the People correctly note, to reduce Wallace's sentence under the circumstances would unfairly compromise the negotiated settlement upon which the parties had agreed. (*People v. Bean* (1989) 213 Cal.App.3d 639, 645 [261 Cal.Rptr. 784].) Second, we cannot affirm a conviction and sentence imposed for a crime that does not exist, notwithstanding the defendant's consent. (See *People v. Soriano* (1992) 4 Cal.App.4th 781, 785 [6 Cal.Rptr.2d 138] ['where fundamental jurisdiction is lacking, it cannot be conferred by consent or estoppel'].) Because Wallace's plea to a violation of section 422.7 is a legal nullity, the judgment must be reversed." (*Wallace, supra*, 109 Cal.App.4th at p. 1704.)

Significantly, the appellate court's order in *Wallace* was to vacate the defendant's plea, to order the dismissed counts reinstated, and to remand the matter "for plea or trial, as appropriate." (*Wallace, supra*, 109 Cal.App.4th at p. 1704.)

2. *The Judgment Convicting Appellant of Violations of Section 422.7 Must Be Vacated*

(a) *The Statutory Framework*

"No person can be punished for a public offense, except upon a legal conviction in a Court having jurisdiction thereof." (Pen. Code, § 681.) "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: [¶] 1. Death; [¶] 2. Imprisonment; [¶] 3. Fine; [¶] 4. Removal from office; or, [¶] 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State." (Pen. Code, § 15.) In relevant part, Penal Code section 6, enacted in 1872, provides: "No act or omission, commenced after twelve o'clock noon of the day on which this Code takes effect as a law, is criminal or punishable, except as prescribed or authorized by this Code . . . ." " 'There is no criminal common law in California. All public offenses or crimes are statutory, and unless there is in force at the time of the commission or omission of a particular act a statute making it a crime or a public offense, no one can be adjudged to suffer punishment for its commission or omission.' " (*In re Harder* (1935) 9 Cal.App.2d 153, 155 [49 P.2d 304].)

(b) *The Statutory Framework Explained*

The subject matter jurisdiction of a California court presiding over a criminal prosecution is predicated on the offense. "To constitute jurisdiction in a criminal case there must be two elements, namely, jurisdiction of the person, and jurisdiction of the subject matter or, as it is sometimes called, of the offense." (*Burns v. Municipal Court* (1961) 195 Cal.App.2d 596, 599 [16 Cal.Rptr. 64].) "The most important is jurisdiction of the subject matter. 'No person can be punished for a public offense, except upon a legal conviction in a court having jurisdiction thereof.' (P.C. 681.) In other words, the court in a criminal trial, like the court in a civil proceeding, must have jurisdiction of the subject matter (in criminal cases, the offense)." (4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Jurisdiction and Venue, § 1, p. 86, citing, inter alia, *Burns v. Municipal Court, supra,* 195 Cal.App.2d at p. 599.)

"Section 15 of the Penal Code defines a crime: 'A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: [listing various punishments].' There must then exist both prohibited or commanded acts and punishment for violation thereof; without both, there is no crime." (*People v. Crutcher* (1968) 262 Cal.App.2d 750, 754 [68 Cal.Rptr. 904].) That there must be a substantive crime and a

punishment for that crime in order to constitute a criminal offense has been long recognized. (E.g., *People v. McNulty* (1892) 93 Cal. 427, 437 [29 P. 61].)

It follows that if there is no crime, the court lacks subject matter jurisdiction. This conclusion is compelled not only by the statutes and cases interpreting those statutes, this conclusion comports with fundamental principles of justice. The notion that a person can be punished under the criminal law for committing an act that is not a crime is entirely outside our system of jurisprudence. This is not to say that appellant may very well have committed a crime or crimes such as assault and battery under circumstances that are particularly offensive and blameworthy. Nonetheless, the fact remains that the act *with which he was charged* is not a crime.

The foregoing principles validate the conclusions of the court in *Wallace* that the court lacked subject matter jurisdiction, that a court "cannot affirm a conviction and sentence imposed for a crime that does not exist" (*Wallace, supra,* 109 Cal.App.4th at p. 1704) and that the plea in that case was a "legal nullity."

(c) *A Void Judgment Is Subject to Collateral Attack*

■ It is fundamental and it cannot be questioned that a judgment that is void for lack of subject matter jurisdiction is subject to collateral attack. "Moreover, lack of jurisdiction will render the judgment void, and subject not only to reversal on appeal but to collateral attack, motion to vacate, or extraordinary writ. (See 2 *Cal. Proc.* (4th), *Jurisdiction*, §387; 8 *Cal. Proc.* (4th), *Attack on Judgment in Trial Court*, §6 et seq.; 8 *Cal. Proc.* (4th), *Extraordinary Writs*, §§39, 50; 6 *Cal. Crim. Law* (3d), *Criminal Writs*, §85.)" (4 Witkin & Epstein, Cal. Criminal Law, *supra*, Jurisdiction and Venue, § 1, p. 86.) Lack of jurisdiction in its most fundamental sense means an entire absence of power to hear or determine the case, i.e., an absence of authority over the subject matter or the parties. When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and such a judgment is vulnerable to direct or collateral attack at any time. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 [16 Cal.Rptr.3d 76, 93 P.3d 1020].) This is a venerable rule of long standing. (E.g., *Conlin v. Blanchard* (1933) 219 Cal. 632, 635–636 [28 P.2d 12]; *Chipman v. Bowman* (1859) 14 Cal. 157, 158–159.)

In *Andrews v. Superior Court* (1946) 29 Cal.2d 208, 209 [174 P.2d 313] (*Andrews*), the defendant pleaded guilty in 1935 in the Police Court of the City of Stockton to contributing to the delinquency of a minor, in violation of Statutes 1915, chapter 631, section 21, the "Juvenile Court Law," which is

now found in the Welfare and Institutions Code. The court first held that the then existing police courts did not have jurisdiction to enforce juvenile court law. (*Andrews, supra,* 29 Cal.2d at p. 213.) A void judgment may be attacked " 'anywhere, directly or collaterally whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither a basis nor evidence of any right whatever.' " (*Id.* at pp. 214–215.) The court concluded that a writ of mandate directing the trial court to "strike the judgment . . . is the proper remedy." (*Id.* at p. 215.) It is noteworthy that the conviction in *Andrews* was over 10 years old when the mandate was issued by the *Andrews* decision, i.e., that judgment was long since final yet it was set aside by a writ of mandate.

(d)  *The Dissent*

Our dissenting colleague writes that "there is no question that the superior court in the present case had the authority to proceed on charges brought against a defendant like Vasilyan based on assaultive felony conduct committed in the court's territorial jurisdiction." (Dis. opn., *post,* at p. 461.)

There are three erroneous premises in this conclusion.

First. The court did not have authority to proceed on charges based on "assaultive felony conduct." There is no such crime as "assaultive felony conduct." The court could proceed on charges of assault (Pen. Code, § 240) and/or battery (Pen. Code, § 242) and other variations of assault and battery recognized by the Penal Code. The point is that none of these offenses was charged.

Second. The court's subject matter jurisdiction had to be predicated on the charged offense, which must be one set forth in the Penal Code. (See pts. 2.(a) & (b) of the Discussion, *ante.*) The term used by the dissent, "assaultive felony conduct," suggests, erroneously, that there is such a thing as a nonstatutory common law crime in California.

■  Third. The reference to the court's "territorial jurisdiction" introduces an irrelevant consideration. Territorial jurisdiction "is the nonfundamental, waivable aspect of jurisdiction" (*People v. Klockman* (1997) 59 Cal.App.4th 621, 627 [69 Cal.Rptr.2d 271]) and it is not to be confused with subject matter jurisdiction.[2] There is no issue in this case about the court's territorial jurisdiction. If the implicit suggestion is that territorial jurisdiction is the same as subject matter jurisdiction, we disagree.

---

[2] " 'The jurisdictional power of a court to act is conceptually divided into subject matter and territorial jurisdiction.' " (*People v. Gbadebo-Soda* (1995) 38 Cal.App.4th 160, 169 [45 Cal.Rptr.2d 40].)

The dissent states that this court concluded that fundamental jurisdiction was lacking in 1994 because the *Wallace* decision held, years later, that the "criminal allegations in Vasilyan's case were mislabeled." (Dis. opn., *post*, at p. 461.)

*Wallace* did not hold that "criminal allegations" were "mislabeled." *Wallace* held that section 422.7 does not set forth a crime in that it does not set forth a substantive offense. Nor is it legally accurate to say that in Vasilyan's case there were "criminal allegations." There were allegations that Vasilyan had violated the Penal Code, but the provisions of that code that he was alleged to have violated do not set forth a crime. Finally, and most importantly, this court does not conclude that there was an error in labels. There was an error in the alleged offense that was charged, i.e. the alleged offense that was charged was not a crime under the Penal Code. As *Wallace, supra*, 109 Cal.App.4th at page 1704 points out, a person cannot be convicted of a crime that does not exist.

The cases cited by our dissenting colleague are, in our view, distinguishable.

In *People v. Level* (2002) 97 Cal.App.4th 1208, 1210 [119 Cal.Rptr.2d 551], the defendant was charged with grand theft and forgery and a with prior strike conviction for robbery. The defendant contended that the prior strike should be treated as a juvenile adjudication because she was, in fact, a juvenile when she had pleaded guilty to robbery. The appellate court rejected this contention, principally on the ground that the defendant had waived her right to have the robbery prosecution proceed in juvenile court. (*Id.* at p. 1211.) Subject matter jurisdiction simply was not an issue in *People v. Level*.

The same is true of *People v. Collins* (1996) 45 Cal.App.4th 849 [53 Cal.Rptr.2d 367] and *In re Griffin* (1967) 67 Cal.2d 343 [62 Cal.Rptr. 1, 431 P.2d 625]; neither decision involves subject matter jurisdiction. In *People v. Collins* the issue was whether the trial court could vacate, on the People's motion, a commitment to the California Youth Authority that had been entered in accordance with a plea agreement; the defendant had not complied with his side of the agreement. (*People v. Collins, supra*, at p. 862.) The appellate court concluded that the trial court had the jurisdiction to entertain such a motion. (*Id.* at p. 864.) The jurisdiction at issue was the power to entertain a motion to vacate; the issue was not fundamental subject matter jurisdiction, which was not challenged. In *In re Griffin*, the claim was that the trial court lacked jurisdiction to revoke probation; the Supreme Court expressly rejected the contention that this was a matter of subject matter jurisdiction. (*In re Griffin, supra*, at p. 347.)

Finally, *People v. Ellis* (1987) 195 Cal.App.3d 334, 336–337 [240 Cal.Rptr. 708], was a case in which the defendant was charged with burglary, four counts of vehicle theft and eight counts of passing bad checks. The defendant admitted a prior conviction for bank robbery in federal court. It turned out that the federal offense did not include all of the elements of the parallel crime under California law. On appeal, the defendant claimed that the admission of the prior federal conviction was invalid. The trial court's subject matter jurisdiction over the multiple charged California offenses was not at issue. The question was one of law, i.e., whether the admission of the prior federal conviction was valid in that the elements of the federal and the parallel California offense were not the same. While there was no question that the federal conviction was lawful, it was error to treat that conviction as a California prior conviction; the court went on to conclude that this error was waived. In any event, the trial court's subject matter jurisdiction rested on the charged California offenses and was not predicated on the federal conviction.

The cases cited by the dissent involve instances of courts acting, arguably, in excess of jurisdiction. This conforms with the dissent's conclusion that at most the present case is one when the court acted in excess of its jurisdiction.[3] But when there is no crime under the Penal Code, there is no subject matter jurisdiction. (See pt. 2.(a) & (b) of the Discussion, *ante*.)

Finally, we have explained in part 2.(c) why the void judgment before us is subject to collateral attack. Thus, contrary to the dissent's conclusion, it is immaterial that appellant did not raise this defect in a prior direct appeal.

We agree with the dissent that the petitions for writs of habeas corpus, *coram nobis* and *audita querela* are unavailable for the reasons stated by the dissenting opinion. Specifically, for the purposes of his petition for a writ of habeas corpus, appellant does not satisfy the requirement that he must be in custody or that he is otherwise deprived of his liberty. (*People v. Villa* (2009) 45 Cal.4th 1063, 1072 [90 Cal.Rptr.3d 344, 202 P.3d 427].) And, as noted in the dissent, the writ of error *coram nobis* is not available for the fundamental reason that this writ applies "where *a fact* unknown to the parties and the court existed at the time of judgment that, if known, would have prevented rendition of the judgment." (*People v. Kim* (2009) 45 Cal.4th 1078, 1093 [90 Cal.Rptr.3d 355, 202 P.3d 436].) The matter at hand is an error of law, which is not cognizable in a *coram nobis* proceeding. (*Ibid.*) We also agree with the dissent that it is questionable that *audita querela* is available in this case but we need not address this issue. Under the facts and circumstances of this

---

[3] The dissent notes that the cases cited at 4 Witkin and Epstein, California Criminal Law, *supra*, Jurisdiction and Venue, section 8, page 95 are instructive. The cited section in this treatise deals with "Estoppel To Attack Excess of Jurisdiction." (*Ibid.*)

case, a motion to vacate the judgment is the proper procedural vehicle to raise the defect of a lack of subject matter jurisdiction.

### 3. Respondent's Contentions Are Without Merit

In considering respondent's contentions, we note preliminarily that it is no small matter to set aside a criminal conviction that is long since final. In the rare instance when this happens, the People are put into the position of having to decide whether to retry a case that was long closed or of not proceeding at all. This is likely to be a difficult decision. On the other hand, prejudice and inconvenience cannot be taken into account when a court is faced with a void judgment. The interest that is protected by a collateral attack on a void judgment is not only the defendant's personal interest. Ultimately, the interest that is at stake is the integrity of the judicial system itself. A conviction resting on a void judgment simply cannot stand.

With this in mind, we address respondent's claim that appellant cannot now contend that section 422.7 is only a penalty provision because he could have advanced this contention in an appeal from the judgment. As the authorities establish without ambiguity or contradiction, the court lacked subject matter jurisdiction in 1994 in that section 422.7 is only a penalty provision. Accordingly, the judgment is void. And a void judgment may be attacked collaterally at any time, as we have shown.

Respondent also contends that appellant is without a remedy in that a writ of error *coram nobis* will only set aside a guilty plea induced by mistake, fraud or coercion and, as appellant is not in custody, he cannot avail himself of a petition for a writ of habeas corpus. Respondent also claims that appellant cannot avail himself of a petition for a writ of *audita querela*. While we agree, it is also true that appellant may move to vacate the void judgment, which is exactly what he did. He sought to rely on these extraordinary writs only in the alternative.

### 4. The Terms of Our Remand

We decline to dismiss the case against appellant or to order the trial court to do so. On this record, we cannot say whether or under what circumstance the information might be amended. Accordingly, we remand with directions to amend or dismiss the information, as appears to the trial court to be appropriate.

## DISPOSITION

The judgment of conviction and appellant's pleas of nolo contendere are vacated. The case is remanded with directions to amend or dismiss the information, as appears appropriate, and for such further proceedings as are appropriate.

Rubin, Acting P. J., concurred.

**O'NEILL, J.,**[*] Dissenting.—Fifteen years ago, defendant and three accomplices committed a violent hate crime on a public street. Early in 1995, defendant accepted a favorable disposition which included a felony no contest plea, probation, and a 39-day jail term. In 2003, defendant was deported for reasons not clear from this record, but apparently based in part on the 1995 convictions, as well as additional felonies committed at a later time. In 2007, defendant, unable to enter the United States legally, moved through counsel to vacate the 1995 convictions on the ground that the People's charging theory was invalidated by a Court of Appeal decision rendered in 2003. I respectfully dissent from a decision that allows a belated collateral attack under these circumstances by a defendant no longer subject to the jurisdiction of any California court.

### FACTUAL AND PROCEDURAL HISTORY

On August 28, 1994, Arthur Vasilyan drove his brother and two other males to an area near the intersection of Santa Monica Boulevard and Hilldale Avenue, where all four men began yelling at two pedestrians with epithets to the effect, "Come on fag[g]ot. Come on fight, fag[g]ot. I'm going to fuck you up." "Do something about it, fag[g]ot." "What are you looking at?" "Fucking faggots." The Vasilyans and their companions then got out of the car, physically attacked their targets, and fled. A witness wrote down the license plate number, and, shortly thereafter, Vasilyan and the others were detained, identified in a street lineup, and arrested.

In September 1994, a magistrate found there was sufficient evidence to hold Vasilyan to answer three counts charging him with violating Penal Code section 422.7.[1]

On February 7, 1995, Vasilyan agreed to waive his constitutional rights and plead no contest to two counts charging him with violating section 422.7. In

---

[*]Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further section references are to the Penal Code.

conjunction with the waiver of rights, the prosecutor also advised Vasilyan as follows: "The law requires that I tell you if you're not a citizen of the United States, consequences of pleading guilty to this offense may result in your deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." When asked whether he understood this, Vasilyan answered, "Yes." The trial court thereafter found that Vasilyan had expressly, knowingly and intelligently waived his constitutional rights, that his plea was freely and voluntarily made with an understanding of its consequences, and that there was a factual basis for his plea. The court placed Vasilyan on probation for 3 years, on condition he serve 39 days in county jail, with 39 days of custody credits, perform 80 hours of community service, and pay $200 to the victim restitution fund.

Vasilyan's probation was revoked in March 1996, and eventually reinstated, based on a new felony case. In that matter, Vasilyan pleaded guilty to 10 counts of burglary and fraudulent use of a credit card, and received a new probation grant and jail sentence in July 1996.

In April 2003, the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE) issued a warrant authorizing Vasilyan's arrest for violation of the immigration laws, and, in May 2003, ICE served Vasilyan with a copy of the warrant. The exact nature of the immigration charges against Vasilyan is not documented in the record; he asserts the deportation proceedings are a consequence of his 1995 convictions. The prosecutor argued otherwise, as will be discussed below.

On June 30, 2003, Division Six of this court ruled that section 422.7 is a "penalty provision," and does not define a substantive criminal offense. (*People v. Wallace* (2003) 109 Cal.App.4th 1699 [1 Cal.Rptr.3d 324] (*Wallace*).)

In February 2004, federal immigration officials deported Vasilyan for having committed an "aggravated felony."

On June 21, 2007, Vasilyan filed a motion to vacate his 1995 convictions, or, in the alternative, petitions for writs of error *coram nobis* or habeas corpus. The sole ground argued by Vasilyan in his original 2007 filing was that he had not understood the immigration consequences of his 1995 plea because his lawyer at the time of the 1995 plea hearing had provided ineffective assistance of counsel by failing to advise him of those consequences, and by failing to assure that Vasilyan had the assistance of an Armenian translator at the hearing. In a supporting declaration, Vasilyan stated that his 1995 convictions had "resulted in [his] being . . . removable/deportable from the United States" and made him "inadmissible to

the United States." He further stated that he did "not recall ever being made aware [by counsel] that by entering the no-contest pleas [he] would be subject to such consequences."

On December 7, 2007, Vasilyan filed an amended motion and petition in which he argued—based on the *Wallace* decision—that the trial court was required to vacate his 1995 convictions for violating section 422.7 because they were of "no legal effect" from their inception. The amended papers added to the requested remedies a "petition for writ of *audita querela*."[2] Further, Vasilyan requested that, if no other remedy was available, the court grant him "declaratory relief so that interested parties may be placed on notice that his [1995] convictions . . . have no legal effect."

At the December 10, 2007 superior court hearing, Vasilyan's counsel's argument focused on *Wallace*. Counsel argued relief should be granted as a matter of equity because Vasilyan stood convicted of "something which is not a criminal offense." The prosecutor argued that the case involved a legal rather than factual mistake; Vasilyan's lack of diligence required denial; and Vasilyan's deportation had resulted not from his 1995 convictions, but as a direct result of a later conviction and prison sentence for felony drug charges, evading a peace officer, and hit and run.

The court denied relief on all grounds, stating the following reasons and findings:

—Vasilyan, having been deported to his Armenian homeland, was not in state or federal custody, and was therefore not entitled to bring a habeas corpus petition;

—*Coram nobis* was unavailable because Vasilyan had not been diligent in seeking relief, which he should have pursued, if not immediately after conviction, at the time of the deportation proceedings or the *Wallace* decision;

—Relief pursuant to section 1016.5 was unavailable because Vasilyan in fact understands English, as evidenced by his long-term residence in the United States, attendance at a Pasadena high school and use of English during the instant crimes as well as in court and interviews by the probation officer,

---

[2] According to Black's Law Dictionary (8th ed. 2004) page 141, column 1, *audita querela* is "[a] writ available to a judgment debtor who seeks a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses." It has also been noted, in the case cited by Vasilyan, that, "[w]hile . . . , *coram nobis* is used to attack a judgment that was infirm, for reasons that later came to light, at the time it was rendered, *audita querela* was a means of attacking a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition." (*U.S. v. Reyes* (5th Cir. 1991) 945 F.2d 862, 863, fn. 1.)

and because Vasilyan had not shown that he would not have entered the plea had he been advised differently about its immigration consequences.

The court noted that Vasilyan's appeal to the court's sense of equity was severely undercut by his overall criminal record and the nature of the instant offenses, including the use of extremely vile hate crime epithets against the 1995 victims.

Although the court did not expressly discuss the *audita querela* writ petition, it clearly indicated it was denying relief on all theories asserted by Vasilyan. The court also found that Vasilyan's claims that he did not understand English and that his original attorney was ineffective as to advice on immigration consequences were not supported by the record. The court noted the practical problem that Vasilyan was seeking to vacate his convictions without submitting himself to the court's jurisdiction for further proceedings on new aggravated assault charges that could be filed. Finally, the court expressed the view that the "mislabeling" of the 1995 charges against Vasilyan was not a fundamental or constitutional error because the plea was based on conduct that would have supported other felony hate crime charges had section 422.7 not been utilized.

On January 24, 2008, Vasilyan filed a timely notice of appeal.

## DISCUSSION

### I.

#### *Conventional Remedies*

As the majority tacitly concedes, defendant's delay in seeking relief has made standard remedies unavailable.

Denial of a petition for habeas corpus is not appealable (*In re Clark* (1993) 5 Cal.4th 750, 767, fn. 7 [21 Cal.Rptr.2d 509, 855 P.2d 729]; *In re Hochberg* (1970) 2 Cal.3d 870, 876 [87 Cal.Rptr. 681, 471 P.2d 1]). Further, Vasilyan lacks standing for habeas corpus in any event because he is not in California custody or otherwise deprived of liberty to the extent required for purposes of the writ. (*People v. Villa* (2009) 45 Cal.4th 1063, 1072 [90 Cal.Rptr.3d 344, 202 P.3d 427]; *In re Azurin* (2001) 87 Cal.App.4th 20, 23–27 [104 Cal.Rptr.2d 284].) Consequently, I would dismiss the purported appeal from the denial of habeas corpus, which disposes entirely of any claim that Vasilyan was ineffectively represented by counsel at the time of the plea. That claim can only be raised by means of a direct appeal or habeas corpus petition. (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 987 [92 Cal.Rptr.2d 161].) Vasilyan's

claim that he did not understand his plea proceedings is also a matter which goes beyond the record and could only be properly raised in a habeas corpus proceeding.

*Coram nobis* was properly denied because Vasilyan's challenge to his 1995 convictions raised an issue of law—the validity of a conviction for violating section 422.7—not an issue involving newly discovered facts affecting his convictions. (See *People v. Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993].) As explained recently by our Supreme Court, *coram nobis* requires discovery of a fact unknown to the parties and the court at the time of the judgment that, "if known, would have prevented rendition of the judgment." (*People v. Kim* (2009) 45 Cal.4th 1078, 1093 [90 Cal.Rptr.3d 355, 202 P.3d 436] (*Kim*).) Even constitutional issues "cannot be vindicated on *coram nobis*" if they do not meet the required test. (*Id.* at p. 1095; see, e.g., *People v. Blalock* (1960) 53 Cal.2d 798, 801 [3 Cal.Rptr. 137, 349 P.2d 953].) In *Kim*, the court held that claimed misunderstandings concerning deportation and other collateral consequences of a guilty plea were not cognizable on *coram nobis*. (*Kim*, at p. 1102; see also *People v. McElwee* (2005) 128 Cal.App.4th 1348, 1352 [27 Cal.Rptr.3d 448] [mistaken belief as to length of sentence]; *People v. Ibanez* (1999) 76 Cal.App.4th 537, 547 [90 Cal.Rptr.2d 536] [ignorance of possibility conviction will have civil consequences under Sexually Violent Predator Act].)

Further, the trial court properly relied on Vasilyan's lack of diligence, which is an appropriate ground for denying *coram nobis*. (*People v. Shorts* (1948) 32 Cal.2d 502, 513 [197 P.2d 330].) The petition was brought 12 years after the convictions, four years after the *Wallace* decision, and four years after the initiation of Vasilyan's deportation proceedings. (See *Kim, supra*, 45 Cal.4th at p. 1100 [lack of diligence established where petition was filed eight years after conviction and almost seven years after the defendant was first subjected to an attempt to deport him].) Finally, as noted in *Kim*, the failure to pursue other available remedies is also a proper reason to deny *coram nobis*, even where such failure is not the petitioner's fault. (*Id.* at p. 1099.) Appellant could have made his claim during the trial proceedings, on direct appeal, or in a timely petition for writ of habeas corpus.

To the extent Vasilyan sought statutory relief pursuant to section 1016.5,[3] the motion was properly denied because the appropriate warning as to

---

[3] Section 1016.5, subdivision (a) requires notification to defendants that a guilty or no contest plea may result in deportation or denial of naturalization. Subdivision (b) provides, in relevant part: "If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense . . . may have the consequences for the defendant of deportation . . . , the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea . . . and enter a plea of not

immigration consequences was given at the time of the plea, and Vasilyan has not established an inability to understand English. (See *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1477 [240 Cal.Rptr. 328].) Further, as the trial court found, Vasilyan has demonstrated no prejudice from any assumed language barrier because he has not shown either (1) a likelihood he would not have entered his plea (in return for probation and a short jail sentence) had he fully understood the possible immigration consequences, or (2) that he was deported solely as a result of the 1995 convictions. (See *People v. Totari* (2002) 28 Cal.4th 876, 884 [123 Cal.Rptr.2d 76, 50 P.3d 781].)

Nonstatutory requests to vacate or set aside judgments essentially duplicate *coram nobis*, and are normally treated as such. (See *People v. Griggs* (1967) 67 Cal.2d 314, 316 [61 Cal.Rptr. 641, 431 P.2d 225]; *People v. Miranda* (2004) 123 Cal.App.4th 1124, 1132, fn. 6 [20 Cal.Rptr.3d 610].) To the extent the majority has identified authority for an exception in the case of a void judgment, further discussion appears below.

As mentioned earlier, Vasilyan contends, without citation to California authority, that the common law writ of *audita querela* is alive and well in this state, as it apparently is in federal court. This is a highly questionable claim. (See *Arechiga v. Housing Authority* (1958) 159 Cal.App.2d 657, 660 [324 P.2d 973] [*audita querela* does not exist in California civil cases, its function having been preempted by certain sections of the Code of Civil Procedure].) I have located no California criminal case answering the question definitively. I would decline to hold such a remedy exists on the present facts, which, as noted by the trial court, do not cry out for equity so long after a prosecution based on such egregious conduct. Even assuming that *audita querela* exists and encompasses Vasilyan's situation, I see no abuse of discretion in the trial court's denial of such relief. Vasilyan's long-delayed petition does not claim factual innocence, nor does he claim conviction without notice of the factual underpinnings of the case against him. What the trial court called the "mislabeling" of the charges could have been raised by Vasilyan at any time, just as it was raised on direct appeal in 2003 by the defendant in *Wallace*.

## II.

### *Nonstatutory Motion to Vacate*

In light of the absence of any standard remedy, the majority's characterization of the original proceedings as *void for lack of subject matter jurisdiction* is crucial to Vasilyan's right to belated collateral relief. I agree with the

guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement."

majority that a truly void judgment should be subject to collateral attack at any time. However, I respectfully disagree that the instant trial court lacked subject matter jurisdiction. Unlike *Andrews v. Superior Court* (1946) 29 Cal.2d 208 [174 P.2d 313], where a statutory "police court" lacked the power to litigate juvenile matters, there is no question that the superior court in the present case had the authority to proceed on charges brought against a defendant like Vasilyan based on assaultive felony conduct committed in the court's territorial jurisdiction.

The majority concludes, in effect, that the trial court lacked fundamental jurisdiction in 1994 because a Court of Appeal decision rendered years later, applied retroactively, established that the criminal allegations in Vasilyan's case were mislabeled. I conclude that, *at worst*, the acceptance of Vasilyan's no contest plea was *in excess* of the original trial court's jurisdiction, and Vasilyan should be estopped from challenging the proceedings based on his acceptance of a very favorable "time served" probationary sentence. (See 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Jurisdiction and Venue, § 8, pp. 95–96.)

The cases cited by Witkin and Epstein are instructive. Most recently, it was held that a defendant who failed to disclose she was a minor when convicted of grand theft was estopped from later challenging the court's jurisdiction to convict and sentence her as an adult. (*People v. Level* (2002) 97 Cal.App.4th 1208, 1213 [119 Cal.Rptr.2d 551].) In *People v. Collins* (1996) 45 Cal.App.4th 849 [53 Cal.Rptr.2d 367], a plea agreement included a requirement that the defendant testify truthfully in later proceedings. When the prosecutor later asserted a breach of that term and moved to set aside the agreement, the defendant was estopped to assert the court's lack of jurisdiction to hear such a motion. (See also *In re Griffin* (1967) 67 Cal.2d 343, 348 [62 Cal.Rptr. 1, 431 P.2d 625] [although the expiration of a probation term normally precludes revocation, a defendant who successfully sought a continuance without informing the court probation would expire before the new date was estopped to object to the belated proceedings].)

Also instructive is *People v. Ellis* (1987) 195 Cal.App.3d 334 [240 Cal.Rptr. 708], where a defendant's nine-year prison sentence included five years based on defendant's admission that a federal felony conviction included all elements of a California serious felony, when, as a matter of law, it did not. The Court of Appeal noted that such a "conclusive legal falsehood" is ordinarily open to collateral attack as "an unlawful act in excess of the trial court's statutory authority and thus in excess of its jurisdiction." (*Id.* at p. 342.) The court then addressed whether Ellis's consent to a plea bargain that included admitting the validity of the prior estopped a later claim of error. It concluded that the strong public policy against defendants pleading

guilty to "crimes they did not commit" was outweighed by the policy against allowing defendants to "trifle with the courts" by claiming error after agreeing to a favorable plea bargain. (*Id.* at pp. 345–347.)

A similar analysis should be applied to the present case. The favorable plea bargain agreed to by Vasilyan, coupled with his delay in making complaint and the fact that he is not even before the courts of California should result in estoppel of his claim of error.

It should be added that the defect in the original charging document did not materially affect the disposition of the case. As can be seen from the factual summary above, there is no question that the evidence at the preliminary examination supported at least misdemeanor assault and battery charges. Had Vasilyan raised the defect in a timely fashion, such charges could have been added and would have been elevated to felonies by the very statute at issue here, section 422.7. In the alternative, the prosecution could have sought misdemeanor convictions for violations of section 422.6, subdivision (a),[4] a charging section closely related to the erroneously charged section 422.7. Either prosecution tactic would undoubtedly have resulted in the same probationary sentence that was actually imposed. Thus, the original trial court's error was really harmless in any event.

## III.

### *Proceedings on Remand*

Finally, I respectfully disagree with the absence of guidance to the court below on remand. I understand the majority opinion to authorize a nonstatutory equitable motion to vacate the judgment. Such an action is most often utilized in civil cases to set aside a judgment based on excusable legal mistake. (See 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 215, p. 823.) Because the superior court will be sitting as a court of equity, I would direct it to impose appropriate conditions on such relief so as to afford fundamental fairness to the People. For example, if the People so request, they should be allowed to file an amended information or a new complaint and either proceed against Vasilyan if he is before the court, or seek a warrant for Vasilyan's arrest based on the amended charges.

---

[4] Section 422.6, subdivision (a), provides: "No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate, interfere with, oppress, or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States in whole or in part because of one or more of the actual or perceived characteristics of the victim listed in subdivision (a) of Section 422.55." Subdivision (c) of the same section provides for misdemeanor punishment of violations of subdivision (a).

Another option would be to condition relief on Vasilyan's agreement that a new judgment be entered reflecting misdemeanor convictions for violations of section 422.6, subdivision (a), which, as discussed above, is the *best* outcome Vasilyan could have hoped for had he raised the charging defect in a timely fashion.

## CONCLUSION

For the foregoing reasons, I would dismiss the purported appeal from the denial of habeas corpus, and affirm the trial court's denial of all other forms of relief.