[No. H019719. Sixth Dist. Sept. 9, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ZUHEIR ANIS TOTARI, Defendant and Appellant.

**COUNSEL**

Norton Tooby for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MIHARA, J.**—Defendant, a citizen of Israel, pleaded guilty to two counts of possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a)) in 1985. The record before us does not reflect that he was advised of the immigration consequences of his pleas. He was granted probation. In 1987, after he had successfully completed probation, his convictions were expunged under Penal Code section 1203.4. Defendant has maintained a spotless criminal record since his 1985 convictions. Defendant was deported to Israel in 1998. He thereafter moved to vacate his 1985 convictions on the ground that he had not been advised of the immigration consequences of his pleas. The superior court concluded that defendant had not exercised due diligence in moving to vacate the convictions. Defendant challenges this finding on

appeal. We conclude that, on the record before us, this finding cannot be upheld. Therefore, we reverse.

## I. Background

Defendant lawfully entered the United States in 1976 when he was just 18 years old. He married a United States citizen in 1981, but the marriage lasted less than four years. In October 1984, defendant was charged by complaint with check fraud (Pen. Code, § 476a, subd. (a)) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The prosecutor decided that defendant was not eligible for diversion. In February 1985, defendant was charged by complaint in a separate case with a single count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) that had occurred on January 31, 1985. In May 1985, defendant pleaded guilty to those three counts in those two cases on the condition that he not be sent to state prison. In June 1985, defendant pleaded guilty to two unrelated counts of forgery (Pen. Code, § 470) on the same condition.[1] Defendant had no known prior criminal convictions when he pleaded guilty to these counts in May and June of 1985.

The June 21, 1985 probation report in the first case noted that the probation officer had contacted the Immigration and Naturalization Service (INS), and an INS representative had "indicated he would investigate the defendant's status in this country, with the possibility of placing a hold on him for deportation proceedings." The July 12, 1985 probation report in the forgery case stated: "An immigration hold has been placed against the defendant as he is in the United States from Israel on a Student Visa. According to immigration officials, deportation proceedings will commence upon completion of any period of incarceration." Defendant was granted probation in all three cases in July 1985 on condition that he serve a jail term for each case.

The probation department filed petitions in October 1987 recommending that defendant be granted early termination of his probation and record clearance under Penal Code section 1203.4. The petitions were granted. Defendant's probation was terminated, and his convictions expunged. Defendant believed that the record clearance "had eliminated any adverse immigration consequences of the conviction[s]." Defendant has maintained a spotless criminal record since his 1985 convictions. He married a United States citizen in 1989, and they now have three young children who are United States citizens.

Defendant was deported to Israel in March 1998.[2] In August 1998, defendant filed motions to vacate his 1985 convictions. He asserted that

---

[1] Defendant also faced other unrelated charges at the time, but none of them led to felony controlled substance convictions.

[2] An alien is deportable if he or she is convicted of a crime relating to a controlled substance. (8 U.S.C. § 1227(a)(2)(B)(i).) The subsequent expungement of such a conviction

he would not have pleaded guilty to the 1985 charges if he had been "accurately and completely informed" of the immigration consequences of his pleas.[3] The prosecution asserted that defendant had been aware of the immigration consequences of his convictions "when he was sentenced in 1985" because an immigration hold had been placed on him at that time. It also argued that defendant had failed to justify his delay in seeking to vacate the convictions. Defendant asserted in response that he was unaware of the immigration hold at the time of his May 1985 pleas and only learned of it shortly before his July 1985 sentencing. The superior court denied defendant's motions to vacate his convictions on the ground that he had not "exercised due diligence in bringing a motion of this type." Defendant filed timely notices of appeal and obtained certificates of probable cause.

· We originally filed an opinion affirming the court's orders, but we granted defendant's petition for rehearing and requested supplemental briefing from the parties on the appropriate standard of review. In conjunction with his supplemental brief, the Attorney General filed a request for judicial notice of immigration documents relating to defendant. Over defendant's opposition, we granted this request. These documents disclose that deportation proceedings were held in 1986 after the INS alleged that defendant had violated his student visa. His 1985 convictions were not asserted as a basis for deportation. Instead, the immigration judge indicated that these convictions did not affect his immigration status. He was granted voluntary departure in lieu of deportation; he apparently failed to depart, and a warrant of deportation issued in November 1986. His deportation in 1998 was the execution of the November 1986 warrant.[4]

does not affect the alien's deportability. (*de la Cruz-Martinez v. Immigration and Naturalization Service* (9th Cir. 1968) 404 F.2d 1198, 1199–1200.)

[3] The records of the May 1985 change of plea hearing had been destroyed prior to defendant's filing of his motions to vacate.

[4] The documents of which we have taken judicial notice are (1) a March 1986 INS order to show cause, notice of hearing and arrest warrant for defendant containing allegations of immigration violations, (2) a March 1986 record of defendant's sworn statement to an INS agent and a contemporaneous "record of deportable alien" prepared by that INS agent, (3) an August 1986 immigration judge's decision and what appears to be an attachment thereto containing the clerk's minutes of the August 1986 deportation hearing, (4) a November 29, 1986 warrant of deportation and an attachment reflecting its execution in March 1998 and (5) a July 1992 order exonerating an immigration bond.

The March 1986 order to show cause alleged that defendant violated his student visa by terminating his enrollment at the University of California at Santa Cruz in 1980 and obtaining paid employment from December 1984 to March 1985. It contained no allegations involving his 1985 convictions, and the events upon which the allegations were based preceded defendant's 1985 convictions.

The August 1986 immigration judge's decision reflects that defendant was denied suspension of deportation but granted voluntary departure on or before November 28, 1986, "with alternate order of deportation to Israel." The attached minutes state that defendant admitted all of the allegations and the judge "made a finding that methamphetamine is not narcotic so he is

## II. Discussion

Defendant challenges the superior court's finding that he had not exercised due diligence. The Attorney General asserts that defendant bore the burden of proving his diligence below and our review is solely for abuse of discretion. (*People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1617 [44 Cal.Rptr.2d 666].) Defendant, on the other hand, claims that the People bore the burden of proving that his motion was untimely and contends that we review the court's decision for substantial evidence. He maintains that requiring a defendant who brings a *motion to vacate* a conviction to prove his diligence improperly imposes a burden that arises only when a defendant files a *petition for a writ of coram nobis*.

Defendant's motion to vacate was filed under Penal Code section 1016.5. Penal Code section 1016.5 authorizes a motion to vacate based on the absence of immigration advisements but does not specify the rules that apply to such a motion. In *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183 [96 Cal.Rptr.2d 463, 999 P.2d 686] (*Zamudio*), the California Supreme Court opined that there was no indication that "the Legislature, when enacting section 1016.5, intended to depart from the *normal rules* ... governing withdrawal of a plea for misadvisement regarding collateral consequences." (*Zamudio* at p. 198.) The "normal rules" for withdrawal of a plea, when the strict time limits set forth in Penal Code section 1018 have expired, are identical to the rules for obtaining a writ of *coram nobis*. This is true because a "motion to vacate" has long been equated in California with a petition for a writ of *coram nobis*. (*People v. Shipman* (1965) 62 Cal.2d 226, 229, fn. 2 [42 Cal.Rptr. 1, 397 P.2d 993]; *People v. Adamson* (1949) 33 Cal.2d 286, 287–288 [201 P.2d 537].) Indeed, the Legislature's 1991 amendment of Penal Code section 1018 verified that it intended for the rules governing writs of *coram nobis* to govern motions to vacate brought under Penal Code section 1016.5 after the expiration of the strict time limits in Penal Code section 1018.[5] Hence, the rules for writs of *coram nobis*, including the burden on a defendant to prove reasonable diligence, *do* apply

not one belonging to 212(a)(23) [and] conviction for forgery doesn't make him 212(a)(9) because his sentence was suspended." This document clearly reflects that the deportation order was not based on defendant's 1985 convictions.

The November 1986 warrant and its attachment reflecting that it was executed in March 1998 confirm that defendant was deported for violating his student visa rather than as a consequence of 1985 convictions.

The 1992 exoneration of the 1986 "immigration bond" is ambiguous, but it tends to rebut the Attorney General's claim that defendant has been a fugitive since 1986.

[5] In *People v. Quesada* (1991) 230 Cal.App.3d 525 [281 Cal.Rptr. 426], the Court of Appeal held that the Penal Code section 1018 rules applied to a motion to vacate under Penal Code section 1016.5 rather than the rules governing a writ of *coram nobis* because a grant of probation was not a judgment within the meaning of the time limit set forth in Penal Code section 1018. (*Quesada,* at p. 531, fn. 2.) The Legislature swiftly reacted by amending Penal

to defendant's motion to vacate his convictions under Penal Code section 1016.5.

"[T]he trial court may properly consider the defendant's delay in making his application, and if 'considerable time' has elapsed between the guilty plea and the motion to withdraw the plea, the burden is on the defendant to explain and justify the delay. [Citation.] The reason for requiring due diligence is obvious. Substantial prejudice to the People may result if the case must proceed to trial after a long delay." (*People v. Castaneda, supra*, 37 Cal.App.4th at p. 1618.) Defendant criticizes *Castaneda* as a writ of *coram nobis* case, but *Castaneda*, like this case, involved a motion to vacate under Penal Code section 1016.5. And *Castaneda* did not *improperly* rely on *coram nobis* cases because, as we have noted above, California considers the two procedures indistinguishable.

Defendant asserts that *Zamudio* held that a motion to vacate under Penal Code section 1016.5 is timely unless the prosecution proves the affirmative defense of laches. He believes that *Zamudio* precludes requiring him to prove his diligence in bringing his motion to vacate. However, he misconstrues the California Supreme Court's analysis in *Zamudio*. The *Zamudio* trial court had permitted the defendant to withdraw his plea. The People sought writ relief. In the main part of the opinion, the California Supreme Court held that the defendant was required to show that he had been prejudiced by the misadvisement. Having determined that relief was merited, the court then discussed a number of other issues for the trial court's guidance on remand.

Under the heading "Diligence," the court discussed *three subissues* related to the People's claim that the defendant's motion should have been denied due to his inexcusable delay. At the outset, the court noted that there was no evidence that the defendant was aware of the immigration consequences *at any time prior to his motion*. It then rejected the People's contention that he was *procedurally barred* from bringing the motion simply because he had not objected at the original sentencing hearing. As the defendant had not been aware of the misadvisement at that time, no procedural bar arose. Next, the court briefly discussed *Castaneda* and its requirement of "reasonable diligence." "The authority petitioner cites, *People v. Castaneda, supra*, 37 Cal.App.4th 1612, stands at most for the proposition that a postjudgment motion to change a plea must be made with 'reasonable diligence' (*id.* at p. 1619). Absent evidence that defendant long ago had cause to question the accuracy of the trial court's 1992 immigration advisements, to hold he should have objected to them earlier would be unfair. This conclusion accords with

Code section 1018 to specifically restrict its application to motions brought within six months of a grant of probation. This amendment was an obvious indication that the Legislature intended for the rules governing writs of *coram nobis* to apply to motions to vacate under Penal Code section 1016.5 that were not brought within Penal Code section 1018's strict time limits. (Stats. 1991, ch. 421, § 1, p. 2172.)

the plain language of section 1016.5, which contains no time bar." (*Zamudio, supra,* 23 Cal.4th at pp. 203–204.) This analysis notably said nothing about the burden of proof. The next paragraph of *Zamudio* addressed the issue of laches. "To the extent petitioner relies on the affirmative defense of laches or its equivalent, the burden is petitioner's to prove the facts comprising that defense." The court concluded that the People had not proven this affirmative defense. (*Zamudio,* at pp. 204–207.)

Although *Zamudio* neither approved nor disapproved of *Castaneda*'s discussion of the "reasonable diligence" requirement, *Zamudio* did *not* hold that the *only* "diligence" issue was laches. Quite the contrary. By separately analyzing the procedural bar, *Castaneda*'s "reasonable diligence" requirement, and the People's alleged laches defense, the California Supreme Court strongly implied that these issues were separate and distinguishable. It accepted the premise that there were potentially *three* diligence issues and separately rejected the People's contentions regarding each of them on the facts of the case before it. Further, in light of *Zamudio*'s recognition that the "normal rules" apply to a motion to vacate under Penal Code section 1016.5, it is clear that the well-established rules requiring a defendant to make a showing of reasonable diligence to succeed on a motion to vacate or a petition for a writ of *coram nobis* are applicable here. Therefore, defendant bore the burden of proving his reasonable diligence, and we review the superior court's finding for abuse of discretion.

Relying on *People v. Gontiz* (1997) 58 Cal.App.4th 1309 [68 Cal.Rptr.2d 786], defendant asserts that he established his reasonable diligence. In *Gontiz,* the Third District, in a footnote, overturned a trial court's rejection of Gontiz's motion to vacate on the ground that it was untimely. Gontiz had entered his pleas in 1991. He did not learn of potential immigration consequences until after his release from prison in 1995. Gontiz filed his motion to vacate nine months later. (*Gontiz,* at pp. 1312–1313.) The Third District opined that Gontiz's motion was not timely until he was "faced with the prospect that one of the adverse immigration consequences would occur." (*Gontiz,* at p. 1313, fn. 2.) "Although the trial court was not required to credit defendant's declaration …, there is no evidence in the record suggesting any other date upon which defendant's ability to bring his motion was triggered. Disbelief of defendant's declaration of timeliness does not establish untimeliness." (*Ibid.,* citations omitted.)

While *Gontiz* is supportive of defendant's appellate contention here, the issue of diligence is particularly fact dependent. Ordinarily, our evaluation of the record on appeal under an abuse of discretion standard requires us to determine whether the superior court's finding was an exercise of discretion that was rationally based *on the record before it.* In this case, however, the Attorney General has sought, and we have granted, a request for judicial notice of documentary evidence that reveals additional facts that are highly

relevant to a determination of whether defendant exercised reasonable diligence in bringing his motions.

After defendant was granted probation in 1985, deportation proceedings were held based solely on defendant's violation of his student visa, *not* his 1985 convictions. In fact, the immigration judge found that the convictions were not a basis for deportation because imposition of sentence had been suspended. Defendant was ordered deported but given the alternative of a voluntary departure by November 1986. He did not depart and a deportation warrant issued in November 1986. There were apparently no further deportation proceedings prior to defendant's deportation in 1998, and, because his 1998 deportation was based on the 1986 deportation warrant, his deportation was a consequence of his violation of his student visa rather than his 1985 convictions. ■ Because these deportation proceedings were not a consequence of defendant's 1985 convictions and the immigration judge's findings could reasonably have led defendant to believe that his 1985 convictions did not have any immigration consequences, it would be unreasonable to infer that the 1985 immigration hold or the 1986 deportation proceedings should have apprised defendant of the potential immigration consequences of his 1985 convictions.

Of course, the superior court cannot be faulted for failing to take this evidence into account since it was not introduced by either party below. Nevertheless, as this evidence undermines the only rational basis for an inference that defendant unreasonably delayed and tends to support defendant's explanation for his delay, the appropriate remedy is a remand to the superior court for a new hearing on defendant's motion. We should not be misunderstood to be precluding the parties from offering additional evidence on the diligence issue or to be directing the superior court to find reasonable diligence. Our disposition is simply based on *the record before us* that contains no indication of an unreasonable delay and strongly supports defendant's explanation for the timing of his motions.

### III. Disposition

The superior court's orders denying defendant's motions to vacate are reversed. On remand, the superior court shall hold a new hearing on defendant's motions.

Rushing, P. J., and Elia, J., concurred.

A petition for a rehearing was denied October 2, 2003, and the opinion was modified to read as printed above.