Filed 7/2/14  P. v. Padilla CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039831 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C9916093) |
| v. | |
| RUBEN PADILLA, | |
| Defendant and Appellant. | |

Defendant Ruben Padilla appeals from a 2013 order denying his Penal Code section 1016.5[1] motion to vacate his 1999 judgment of conviction and to withdraw his plea of no contest to one count of possession of cocaine for sale (Health & Saf. Code, § 11351).  He contends his plea must be set aside because the trial court did not adequately explain the immigration consequences of the plea as required by section 1016.5.  We conclude that the trial court substantially complied with the requirements of section 1016.5.  We will therefore affirm the trial court's order denying defendant's motion to vacate the judgment and withdraw his plea.

---

[1] All further unspecified statutory references are to the Penal Code.

## FACTS[2]

On January 24, 1999, defendant was contacted by San José Police Officer Raul Martinez, a member of the Narcotics Enforcement Team (NET), in a "high narcotic area." After defendant agreed to a pat search, Officer Martinez found: (1) a plastic bag that contained 29.5 grams of powder cocaine inside defendant's pants; (2) $314 in cash; and (3) a pager. The pager sounded four times in 15 minutes. After obtaining consent to search defendant's home, the NET found $540 in cash in a jacket in defendant's closet.

## PROCEDURAL HISTORY

### Initial Proceedings

Defendant was charged by complaint with one count of possession of cocaine for sale (Health & Saf. Code, § 11351). At the preliminary hearing in May 1999, defendant was held to answer. He was subsequently charged by information with the same offense, to which he pleaded not guilty.

### Plea Agreement and Change of Plea Hearing

On August 23, 1999, after the case was assigned to a trial department, the parties entered into a negotiated disposition under which defendant pleaded no contest to possession of cocaine for sale (Health & Saf. Code, § 11351) in exchange for a "conditional no state prison" sentence of 10 months "top/bottom" (probation with 10 months in jail as a condition of probation).

---

[2] The facts are based on evidence presented at the preliminary hearing, the stipulations of counsel regarding the factual basis for the plea at the change of plea hearing, the probation report, and the police report (a copy of which was attached to the opposition to defendant's section 1016.5 motion).

Defendant was assisted by a Spanish-language interpreter at the change of plea hearing. When the court took the plea, the following discussion ensued regarding the immigration consequences of the plea:

"THE COURT: Okay. Mr. Guezzetta [*sic* (defense counsel)], have you discussed with your client the fact that or, I should say, if he's not a citizen of the United States that conviction of the offense for which he has been charged may have the consequences of deportation from[,] exclusion from admission to[,] or denial of naturalization pursuant to the laws of the United States?

"MR. GUZZETTA: I have, Your Honor.

"THE COURT: Mr. Padilla[,] have you discussed that with your attorney?

"THE DEFENDANT: Yes."

The court also asked defendant, "Has anyone made any promises to you, sir, other than as in connection with what I just said about the negotiated disposition in this case?" Defendant responded, "No."

In October 1999, defendant was sentenced in accordance with the plea agreement. The court granted three years' probation on the condition that defendant serve 10 months in county jail. The court imposed fines and fees and ordered defendant to participate in a substance abuse program.

### Section 1016.5 Motion to Vacate Judgment and Withdraw the Plea

In February 2013, more than 13 years after defendant entered his plea, he was stopped by immigration authorities at Mineta San José International Airport as he returned from a trip to México. He was detained for his 1999 conviction for possession of cocaine for sale, charged with violating section 212, subdivision (a)(2)(A)(i)(II) of the Immigration and Nationality Act (violating a state law relating to a controlled

3

substance),[3] and placed in immigration custody. On April 24, 2013, the Immigration Court notified defendant that his case was scheduled for removal proceedings on June 13, 2013.

On May 21, 2013, defendant filed a motion pursuant to section 1016.5 to vacate his 1999 judgment of conviction on the ground that he was not properly advised of the immigration consequences of his plea. He asked the court to rule on the motion before his June 13, 2013 hearing in Immigration Court.

In a declaration in support of the motion, defendant stated that at the preliminary hearing in May 1999, he told his public defender he was a lawful permanent resident; that his counsel discussed the charges with him, but not the immigration consequences of a conviction; and that the judge offered him a "10-month deal" and told him he would not be deported.[4] Defendant also declared that after the preliminary hearing, his counsel told him he could no longer represent him and advised him to retain private counsel. He therefore hired Rudy Guzzetta as defense counsel.[5] Defendant declared that Guzzetta "promised that he would get the charges dropped or, in the alternative, knock down the felony charges to a misdemeanor." Defendant said he "wanted to go to trial because [he] was innocent of possessing drugs for sale" and he told Guzzetta he was a lawful permanent resident. He also declared that "Guzzetta did not advise [him] of the immigration consequences" of the charge or "that [his plea] would lead to his

---

[3] Section 212 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1182.

[4] There is no evidence of the judge's alleged comment about deportation in the record. At the change of plea hearing on August 23, 1999, the trial judge commented that another judge had "offered ten months" during settlement discussions on August 13, 1999.

[5] According to the clerk's transcript, after the information was filed, defendant was represented by a different public defender who appeared six times between May 17 and July 30, 1999. That attorney was relieved on July 30, 1999, when private counsel Guzzetta made his first appearance in this matter.

4

deportation." Defendant declared that Guzzetta instead told him the offer "was a good deal because the immigration [*sic*] would not deport" him, that he relied on Guzzetta's and the court's statements that he would not be deported when he pleaded no contest, and that if he had known that his conviction would lead to deportation, he "would not have pled [*sic*] and would have gone to trial."

In his points and authorities, defendant argued that the court did not properly advise him of the immigration consequences of his plea because it gave the legally required advisement to defense counsel instead of directly to him, and because the court's question to him (asking whether he had "discussed that" with his attorney) was ambiguous.

The prosecution opposed the motion, arguing that defendant was properly advised of the immigration consequences of his plea. The prosecution contended that even if defendant was misadvised by counsel, the trial court "clearly and unequivocally" advised defendant of the three possible immigration consequences of the plea, and that at the hearing, defendant did not tell the court that he had received contrary advice from anyone. The prosecution also asserted that if there was error, defendant had not shown that he was prejudiced.

The trial court found that "a sufficient advisement [was] given at the time [defendant] entered his no contest plea" and denied the motion. The court stated, " 'The advisement need not be in the statutory language, and substantial compliance is all that is required, "as long as the defendant is specifically advised of all three separate immigration consequences of [the] plea." ' " The court rejected defendant's contention that the advisement was insufficient because it was stated in the form of a question to defendant's counsel rather than directed to defendant himself, stating, "It would elevate form over substance to conclude that the . . . colloquy did not advise defendant of the immigration consequences." The court also rejected defendant's contention that the question "have you discussed that with your attorney?" was ambiguous.

5

*General Principles Regarding Section 1016.5 Motions to Vacate*

Section 1016.5, subdivision (a) "requires a trial court, before accepting a plea of guilty or no contest, to explain to a defendant that if the defendant is not a citizen of this country, conviction of the charged offense 'may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization . . . .' "[6] (*People v. Arriaga* (2014) 58 Cal.4th 950, 957 (*Arriaga*).) "The defendant is then entitled to 'additional time to consider the appropriateness of the plea in light of the advisement . . . .' [Citation.] The section contemplates a period during which the defendant, without risking the loss of the existing plea bargain, can reconsider its value in light of the immigration consequences that will result from it and attempt to negotiate a different bargain that will not have the same consequences." (*People v. Martinez* (2013) 57 Cal.4th 555, 562 (*Martinez*), citing § 1016.5, subds. (b), (d).)

"Section 1016.5, subdivision (d) states the Legislature's purpose and intent in enacting that section: 'The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States . . . , a plea of guilty or nolo contendere is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo

---

[6] Section 1016.5 provides in part: "Prior to acceptance of a plea of guilty or nolo contendere . . . , the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea.  It is also the intent of the Legislature that the court in such cases shall grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event the defendant or the defendant's counsel was unaware of the possibility of deportation, exclusion from admission to the United States, or denial of naturalization as a result of conviction.  It is further the intent of the Legislature that at the time of the plea no defendant shall be required to disclose his or her legal status to the court.' "  (*Martinez, supra*, 57 Cal.4th at pp. 561-562, quoting § 1016.5, subd. (d).)

Section 1016.5, subdivision (b) "provides a remedy for a noncitizen defendant who is not advised of these consequences:  'If . . . the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which [the] defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization . . . the court, on [the] defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty.' "  (*Arriaga, supra*, 58 Cal.4th at p. 957.)

To prevail on a section 1016.5 motion, a defendant must establish three elements:  "(1) that the advisements were not given; (2) that the conviction may result in adverse immigration consequences; and (3) that the defendant would not have pled guilty or no contest had proper advisements been given."  (*Arriaga*, 58 Cal.4th at pp. 957-958, citing *Martinez, supra*, 57 Cal.4th at pp. 558-559.)[7]

_____

[7] Regarding the third element, although section 1016.5 does not expressly recite that a defendant seeking relief for a failure to advise must establish prejudice, in *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199-200 (*Zamudio*) the Supreme Court construed section 1016.5 "to require that defendants, in order to obtain relief under subdivision (b) of the statute, demonstrate they were prejudiced by any failure of the court to provide complete advisements under subdivision (a)."  The court adopted the test for prejudice established in *People v. Watson* (1956) 46 Cal.2d 818, 836, as applied to a

## Standard of Review

We review an order denying a section 1016.5 motion to vacate the judgment for an abuse of discretion. (*Zamudio*, *supra*, 23 Cal.4th at p. 191; see also *People v. Chien* (2008) 159 Cal.App.4th 1283, 1287 (*Chien*).) To establish an abuse of discretion, defendant must show that the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Limon* (2009) 179 Cal.App.4th 1514, 1518 (*Limon*).) " 'Accordingly, we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious.' " (*People v. Clancey* (2013) 56 Cal.4th 562, 578 quoting *People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 746.) To determine if a court abused its discretion, we must thus consider "the legal principles and policies that should have guided the court's actions." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

## Defendant's Contentions

Defendant contends the trial court abused its discretion when it concluded that he had not established the first element for section 1016.5 relief—i.e., that the immigration advisements were not given. He argues that (1) the advisements were given in the form of a question directed to his counsel instead of directly to him, and (2) the court's follow-up question directed to him (defendant) was vague. He also contends the trial court erred in not considering evidence that his counsel was ineffective because his counsel's ineffectiveness was relevant to his (defendant's) understanding of the advisement. In addition, he argues that he had established the second and third elements required for section 1016.5 relief.

---

failure to advise of the consequences of a plea, explaining the defendant must establish " 'it is "reasonably probable" the defendant would not have pleaded guilty if properly advised.' " (*Zamudio*, at p. 210.)

8

***The Trial Court Substantially Complied with Section 1016.5***

Section 1016.5 does not mandate a verbatim recitation of the statute, so long as substantial compliance is achieved and the defendant is advised of all three possible immigration consequences set forth in section 1016.5. (*Zamudio*, *supra*, 23 Cal.4th at p. 208; *People v. Gutierrez* (2003) 106 Cal.App.4th 169, 173-174 (*Gutierrez*).) In *Zamudio*, the defendant was not advised of the possibility of "exclusion from admission to the United States" (§ 1016.5, subd. (a)), but was advised of the other two immigration consequences: deportation and denial of naturalization. (*Zamudio*, at p. 207.) In that situation, the Supreme Court recognized that if the defendant's circumstances, at the time of his original plea, did not actually allow for the possibility of the consequence of exclusion from the United States, "the advisements he received concerning deportation and naturalization would have been in substantial compliance with the requirements of section 1016.5." (*Id*. at p. 208.)

Other cases have held that trial courts need only substantially comply with the advisement requirement under section 1016.5. In *Gutierrez*, *supra*, 106 Cal.App.4th 169, the prosecutor (rather than the court) gave the advisement and told the defendant: " 'If you are not a United States citizen, you will be deported from the United States, denied re-entry and denied amnesty or naturalization. [¶] Mr. Gutierrez, do you understand that?' [The defendant] answered, 'Yes.' " (*Id*. at p. 171.) The defendant appealed, arguing in part that the prosecutor's advisement failed to accurately track the language of section 1016.5, since the prosecutor used the phrase "denied re-entry" instead of the phrase " 'exclusion from admission.' " (*Gutierrez*, at p. 173.) The appellate court rejected this argument: "only substantial compliance is required under section 1016.5 as long as the defendant is specifically advised of all three separate immigration consequences of his plea." (*Id*. at p. 174.) The court observed that the defendant in that case "was expressly told that one of the immigration consequences of his conviction was

9

that he would be denied reentry into the United States; in other words, under the statute, he would be excluded from the United States.  The trial court, thus, substantially complied with the statute, and, hence, committed no error in the manner in which it took appellant's plea." (*Ibid*.)

*People v. Ramirez* (1999) 71 Cal.App.4th 519 (*Ramirez*) is in accord.  That case held that the trial court had complied with the requirements of section 1016.5 when the required advisements were contained in a written plea form rather than given orally by the trial judge.  When the trial court took the plea, it failed to advise the defendant orally of the immigration consequences of his plea.  But the defendant had signed a change of plea form that "warned of all three possible [immigration] consequences in precise statutory language." (*Id.* at p. 523.)  The appellate court rejected Ramirez's contention that section 1016.5 requires the court to orally advise a defendant of the immigration consequences of his plea.  (*Id.* at pp. 521-522.)  The court explained that "there is no language in the statute requiring [oral] advisements by the court.  . . . [T]he legislative purpose of section 1016.5 is to ensure a defendant is advised of the immigration consequences of his plea and given an opportunity to consider them.  So long as the advisements are given, the language of the advisements appears in the record for appellate consideration of their adequacy, and the trial court satisfies itself that the defendant understood the advisements and had an opportunity to discuss the consequences with counsel, the legislative purpose of section 1016.5 is met." (*Id.* at p. 522; see also *Limon*, *supra*, 179 Cal.App.4th at p. 1518 [omission of a single non-substantive word ("hereby") from statutory language did not render advisement ineffective]; *People v. Quesada* (1991) 230 Cal.App.3d 525, 535-536, superseded by statute on another ground as stated in *People v. Totari* (2003) 111 Cal.App.4th 1202, 1206-1207, fn. 5 [§ 1016.5 advisement may be given by anyone acting on behalf of the court, "including the judge, counsel, the court reporter, or the clerk"; it is common practice for the prosecutor or defense counsel to give the advisement; advisement need

not be given orally and may be recited in plea form if "the defendant and his counsel are questioned concerning the form to ensure that defendant actually reads and understands it"].)

Most recently, in *Arriaga*, our Supreme Court concluded that substantial evidence supported the trial court's finding on a section 1016.5 motion "that [the] defendant was told of the immigration consequences" of his plea where the advisements were given by the prosecutor rather than the trial court. (*Arriaga*, *supra*, 58 Cal.4th at pp. 963-964.) In *Arriaga*, there was no reporter's transcript of the defendant's 1986 plea hearing, and the minute order did not set forth the actual advisements given. The parties agreed that section 1016.5, subdivision (b)'s presumption of nonadvisement[8] applied and that the presumption was rebuttable. (*Id.* at p. 956.) The Supreme Court held that the prosecution had rebutted that presumption with the testimony of the former prosecutor who had handled the 1986 hearing. That prosecutor testified that although he did not recall the defendant, "it was his practice to always advise defendants of the immigration consequences of pleading guilty or no contest, as required by section 1016.5" and "recited in detail his oft-given advisement of immigration consequences." (*Id.* at pp. 963-964.) The court held that "[t]his testimony, coupled with the checked box on the minute order . . . , which indicated, 'Defendant advised of possible effects of plea on any alien or citizenship/probation or parole status,' support[ed] the trial court's finding that [the] defendant was told of the immigration consequences of pleading guilty." (*Id.* at p. 964.)

With these cases in mind, we hold that the advisement defendant received in this case in 1999 substantially complied with section 1016.5. The trial court asked defense counsel, "have you discussed with your client the fact that . . . if he's not a citizen of the United States that conviction of the offense for which he has been charged may have the

---

[8] Section 1016.5, subdivision (b) provides in relevant part: "Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement."

11

consequences of deportation from[,] exclusion from admission to[,] or denial of naturalization pursuant to the laws of the United States?"  The trial court's main deviance from the statutory language was that rather than direct the statement to the defendant, the judge asked a question of defense counsel.  But after defense counsel answered affirmatively, the court followed up and asked defendant directly, "have you discussed *that* with your attorney?"  (Italics added.)  Defendant argues the court's follow-up question to him was vague, since the trial court did not define what it meant by "that." He contends he understood it to mean the conversation he had with his counsel before the court took the plea in which his counsel told him he would not be deported.

The advisement of the immigration consequences of the plea was the very first advisement the trial court gave in the plea colloquy.  Thus, there is no possibility that defendant could have understood the court's reference to a discussion of "that" to refer to any other advisement or statement by the court.  Defendant had just heard the court ask defense counsel whether he had discussed with defendant the fact that a conviction "may have consequences of deportation . . . , exclusion . . . , or denial of naturalization."  There is nothing else the court's follow-up question to defendant could have referred to.  We agree with the trial court that it would elevate form over substance to conclude that the colloquy at issue did not advise defendant of the immigration consequences of his plea. That the court's advisement may have contradicted advice defense counsel may have separately given defendant outside of the court's presence does not mean the court failed to advise of the immigration consequences of the plea.  If the advisement contradicted what counsel said, defendant should have asked for additional time to consider the consequences of his plea, which is expressly provided for by section 1016.5.[9]

---

[9]  Defendant also contends the trial court erred when it excluded evidence of ineffective assistance by defense counsel Guzzetta because that evidence was relevant to explain defendant's "understanding of the word, [*sic*] 'that' used by the trial court."  But the court did not exclude the evidence defendant submitted regarding alleged ineffective assistance by Guzzetta or his record of discipline after the plea was taken in this case.

12

We note that the court failed to specifically state that the immigration consequences included "exclusion from admission *to the United States*." However, we do not believe the lack of reference to "the United States" rendered the advisement unacceptably vague. The advisement given to the defendant in *Gutierrez* similarly lacked a specific reference to the United States, yet was still determined to be in substantial compliance. (*Gutierrez*, *supra*, 106 Cal.App.4th at p. 171.)

For these reasons, we hold that the court's advisement of the immigration consequences in this case, in the form of a question to defense counsel, followed by a follow-up question directed to defendant, substantially complied with the requirements of section 1016.5. Since we determine that the advisement was adequate, we need not reach the questions of whether defendant established the other elements of his claim (i.e., that his conviction may result in adverse immigration consequences or that he would not have pleaded no contest had proper advisements been given). Since we conclude that the trial court properly admonished defendant regarding the possible immigration consequences of his plea in 1999, we hold that the trial court did not abuse its discretion in 2013 when it denied defendant's section 1016.5 motion to vacate the judgment and to withdraw his plea.

---

The court's order acknowledged defendant's contention and correctly held that "[i]neffective assistance by his attorney, however, should be addressed through a different procedural device than a motion pursuant to . . . section 1016.5." (*People v. Kim* (2009) 45 Cal.4th 1078, 1107-1108, fn. 20 [claim that trial counsel "was somehow ineffective is not a wrong encompassed by" section 1016.5], citing *Chien*, *supra*, 159 Cal.App.4th 1283 [ineffectiveness of counsel claim is not cognizable in section 1016.5 motion].)

13

## DISPOSITION

The trial court's order denying defendant's section 1016.5 motion to vacate the judgment and to withdraw his plea is affirmed.

_____
Márquez, J.

WE CONCUR:

_____
 Rushing, P. J.

_____
 Premo, J.

14