Filed 9/29/14  P. v. Muniz CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>   v.<br><br>SERGIO MUNIZ,<br><br>          Defendant and Appellant. | B253103<br><br>  (Los Angeles County<br>   Super. Ct. No. A479192) |

APPEAL from an order of the Superior Court of Los Angeles County. Lori A. Fournier, Judge.  Affirmed.

Sara E. Coppin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Sergio Muniz appeals from the order denying his motion to vacate his 1988 cocaine transportation guilty plea on the ground that he was not properly advised of the immigration consequences of that plea. We affirm because, as a matter of law, he waited too long to bring his challenge.

## FACTS AND PROCEDURAL HISTORY

In December 1988 Sergio Muniz entered an open plea of guilty to one count of transporting cocaine (Health & Saf. Code, § 11352, subd. (a)), along with a sentence enhancement allegation that the transaction involved more than 28.5 grams of the drug (Pen. Code, § 1203.073, subd. (b)(1)).[1] Muniz was sentenced to 4 years in state prison with all but one year suspended, was awarded custody credits of 151 days, and was placed on 5 years probation.

As part of his plea, Muniz signed and initialed a form stating that he understood his conviction carried certain immigration consequences if he were not an American citizen, including deportation, exclusion from admission to the United States, and denial of naturalization. Muniz was represented by counsel at the time.

In February 2001 Muniz had another lawyer file a motion to vacate the 1988 judgment under section 1203.4, which gives the trial court discretion to do so in the interests of justice if the defendant successfully served probation. The motion stated that Muniz successfully completed probation, had no further convictions, and sought to vacate the judgment in order to facilitate his application for citizenship. That motion was granted in March 2001. However, that action had no effect on the federal immigration consequences of Muniz's conviction. (*People v. Martinez* (2013) 57 Cal.4th 555, 560.)

In April 2013, represented by a third lawyer, Muniz filed a motion to vacate the 1988 plea under section 1016.5, contending that he had not been properly advised of the immigration consequences of his plea in accordance with that statute. Muniz's declaration stated that his parents brought him to the United States from Mexico in 1976

---

[1]     All further section references are to the Penal Code.

2

when he was eight years old. He was an addict and heavy cocaine user in 1988 when he got caught up in an undercover police sting operation. An undercover officer offered to pay Muniz $100 if Muniz would buy $100 worth of cocaine from Muniz's supplier. Muniz agreed and was arrested after he delivered the cocaine to the undercover officer.

Muniz said that when he entered his plea, his lawyer told him he would get probation and serve one year in county jail if he pleaded guilty because he had no criminal record. The lawyer told him to fill out the form and initial all the boxes, but Muniz said he never read the form and nobody ever explained the immigration consequences of his plea. According to Muniz, he signed because he was in jail and was nervous and upset. If he had known of those consequences he would have "moved heaven and earth" to achieve a disposition that allowed him to stay in the United States. However, his lawyer "never said anything . . . about having an entrapment defense, or seeking some disposition which would not require deportation."

Muniz said that since his conviction he has married, raised children, started his own business, and led an honest, law-abiding life. He once had a work permit that allowed him to be in the United States legally but that was revoked in 1995 and he has been here without proper documentation ever since. Because Muniz's eldest child is a citizen and was about to turn 21, Muniz would be eligible to apply for permanent residency except for his conviction. Muniz said "I had no idea I could do anything about my conviction in this case until I consulted an immigration attorney a few months ago about trying to become legal in this country. He advised me that I could employ an attorney to try to vacate my conviction or otherwise change it in some fashion so that I could become legal . . . ."

At the October 2013 hearing on Muniz's motion, the reporter's transcript from his 1988 plea proceedings was not available, although the preliminary hearing and sentencing transcripts were, along with the probation reports.[2] Muniz testified largely in

---

**2** Respondent suggests the plea proceeding transcript was destroyed after 10 years, as allowed by Government Code section 69955, subdivision (h), a prospect we consider likely.

3

accordance with his declaration concerning the circumstances surrounding his arrest and guilty plea, emphasizing that neither his lawyer nor anyone else told him about the immigration consequences of his plea and that he did not understand the forms he was signing. At the time of the plea his family was in the United States, not Mexico, and if he had known of the immigration consequences, he would have at least thought "about going to trial or something [else]." On cross-examination, Muniz testified that he first learned in 1991 that he was subject to deportation as a result of his conviction.

The prosecutor argued that the motion to vacate was subject to the same diligence requirements applicable to petitions for writs of error coram nobis, making the motion untimely based on Muniz's admission that he became aware of the immigration consequences of his plea in 1991. The trial court chose not to reach that issue, finding instead that Muniz had not been prejudiced by the lack of proper advisements because, given the nature of the charges, the strength of the evidence, and the favorable sentence he received, it was not reasonably likely he would have done anything different. The trial court reached this conclusion after reading the preliminary hearing and sentencing transcripts as well as the probation reports.

## DISCUSSION

Before accepting a plea of guilty or no contest, the trial court must explain to a defendant that if he is not an American citizen his conviction may lead to his deportation, exclusion from admission to this country, or denial of naturalization. (§ 1016.5, subd. (a).) If the court fails to do so and the conviction may have adverse immigration consequences, the defendant may bring a motion to vacate the judgment and withdraw his plea. (§ 1016.5, subd. (b).)

To prevail, the defendant must show: (1) the advisements were not given; (2) the conviction may result in adverse immigration consequences; and (3) he would not have pled guilty or no contest had the proper advisements been given. (*People v. Arriaga* (2014) 58 Cal.4th 950, 957-958.) The absence of a record that the advisements were

4

given creates a presumption of nonadvisement that the prosecution must rebut by a preponderance of the evidence. (§ 1016.5, subd. (b); *Arriaga,* at pp. 962-963.)

Motions to vacate under section 1016.5 are the statutory equivalent of coram nobis petitions and are subject to the diligence requirements applicable to such petitions. (*People v. Kim* (2009) 45 Cal.4th 1078, 1104 (*Kim*); *People v. Totari* (2003) 111 Cal.App.4th 1202, 1206-1208 (*Totari*).)[3] A defendant seeking coram nobis relief faces a standard of diligence similar to that required in civil cases where a party seeks relief against late-discovered fraud. (*Kim,* at p. 1096.)

If considerable time has elapsed between the guilty plea and the motion to withdraw the plea, the defendant has the burden to explain and justify the delay. (*People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1618 (*Castaneda*).) Muniz bore the burden of proving that he acted with reasonable diligence or did not "long ago [have] cause to question the accuracy of the trial court's [earlier] immigration advisements . . . ." (*People v. Suprior Court (Zamudio)* (1996) 23 Cal.4th 183, 204 (*Zamudio*); *Totari, supra,* 111 Cal.App.4th at pp. 1207-1208; *Castaneda,* at pp. 1618-1619.)

Muniz was therefore required to allege the time and circumstances under which the facts were discovered so the trial court could determine as a matter of law whether he acted with due diligence. (*Kim, supra,* 45 Cal.4th at p. 1096 [discussing coram nobis petition to vacate judgment for lack of proper immigration consequence advisements].) "The diligence requirement is not some abstract technical obstacle placed randomly before litigants seeking relief, but instead reflects the balance between the state's interest in the finality of decided cases and its interest in providing a reasonable avenue of relief for those whose rights have allegedly been violated." (*Id.* at p. 1097.) "The reason for requiring due diligence is obvious. Substantial prejudice to the People may result if the

---

**3**     The writ of error coram nobis is a limited remedy that applies where a fact unknown to the parties existed at the time of judgment that, if known, would have prevented rendition of the judgment. It does not apply to correct errors of law. (*Kim, supra,* 45 Cal.4th at p. 1093.)

5

case must proceed to trial after a long delay." (*Castaneda, supra,* 37 Cal.App.4th at p. 1618.)

In *Kim, supra,* 45 Cal.4th 1078, the Supreme Court considered the coram nobis petition of a defendant seeking to vacate his guilty plea to theft offenses based on insufficient immigration advisements. The court held he was not reasonably diligent when the conviction occurred in 1997, deportation proceedings were brought in 1998, and the petition was not filed until 2005. (*Id.* at p. 1098.) In *Castaneda, supra,* 37 Cal.App.4th 1612, the defendant brought a section 1016.5 motion in 1994 to vacate his 1983 no contest plea to an assault charge even though he had been facing deportation since 1988. The Court of Appeal affirmed the trial court's denial of that motion because the defendant failed to allege any facts concerning when and how he learned he faced adverse immigration consequences or that explained why he waited so long to challenge the plea. (*Id.* at p. 1619.)

In contrast, the court in *Zamudio, supra,* 23 Cal.4th 183, held that a defendant acted with reasonable diligence when he brought a section 1016.5 motion in 1998 to vacate convictions from 1992 and 1997 because the nature of the 1992 convictions was not enough to trigger knowledge of adverse immigration consequences. (*Id.* at pp. 205-207.) The court in *Totari, supra,* 111 Cal.App.4th 1202, held that the defendant exercised due diligence in bringing his section 1016.5 motion in 1998 to challenge 1985 guilty pleas to drug possession charges because immigration proceedings that started in 1986 were based on student visa violations, not on the criminal convictions. (*Id.* at p. 1209.)

Respondent contends that Muniz's admission that he first learned in 1991 that his conviction might lead to his deportation establishes his lack of diligence in bringing his section 1016.5 motion. We agree.

Muniz testified that he first learned in *1991* that he was subject to deportation as a result of his 1988 guilty plea. The work permit that made it legal for him to be in the United States was revoked in 1995, and in 2001 he successfully vacated the judgment in his criminal case under section 1203.4 in order to facilitate his citizenship application. In

6

short, he knew of and actually suffered immigration consequences from his conviction and took legal steps to remove those consequences years before bringing his section 1016.5 motion. Muniz's only explanation for the delay was his assertion that he was unaware such relief was available until he spoke to a lawyer in early 2013. That explanation does not permit a finding of reasonable diligence.

As noted above, the due diligence requirement for coram nobis – and by extension motions under section 1016.5 – is akin to the diligence standard for delayed discovery of fraud. (*Kim, supra,* 45 Cal.4th at p. 1096.) Application of the delayed discovery doctrine depends on the plaintiff's actual or presumptive knowledge of the facts. (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 897-898.) "It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action. Thus, if one has suffered appreciable harm and knows or suspects that professional blundering is its cause, *the fact that an attorney has not yet advised him does not postpone commencement of the limitations period.* [Citations.]" (*Id.* at p. 898, italics added.)

Therefore, the only explanation offered for Muniz's delay is legally insufficient, and the focus is instead on when he learned the relevant facts. The undisputed evidence shows that Muniz learned of the adverse immigration consequences of his conviction in 1991, 22 years before moving to vacate the judgment and withdraw his plea. Those consequences were brought home in 1995, when his work permit was revoked. He acted on those consequences in 2001, albeit to no avail, when he vacated the judgment under section 1203.4. On these facts the absence of reasonable diligence exists as a matter of law.

Even though the trial court did not reach this ground, we may affirm on any correct theory of law applicable to the case, so long as the evidence is undisputed. (*People v. Brown* (2004) 33 Cal.4th 892, 901; *CTC Real Estate Services v. Lepe* (2006) 140 Cal.App.4th 856, 859-860.) As a result, we need not reach the other issues raised by the parties.

## DISPOSITION

The order denying appellant's motion to vacate under Penal Code section 1016.5 is affirmed.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

8