Filed 9/5/14  P. v. Adams CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B249268 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA380172) |
| v. | |
| JOHN MILTON ADAMS II, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dennis J. Landin, Judge.  Affirmed.

Law Office of Sharon P. Babakhan, Sharon Paris Babakhan for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Arlene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On May 26, 2011, defendant John Adams pleaded no contest to one count of corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a)).[1] Defendant admitted that he personally inflicted great bodily injury upon the victim within the meaning of section 12022.7, subdivision (e). The trial court imposed a total sentence of seven years consisting of the midterm of three years for the offense and four years for the great bodily injury enhancement. The court suspended execution of sentence and placed defendant on formal probation for three years. Terms and conditions of probation included a condition requiring defendant to enroll in and complete a 52-week domestic violence counseling program.

Defendant later violated his probation by committing a new offense—felony vandalism—in addition to failing to complete his domestic violence counseling program. After defendant admitted the violations, the court sentenced him to state prison for the seven-year term. The court subsequently denied defendant's motion to withdraw the admissions.

Defendant appeals on the grounds that: (1) the trial court abused its discretion when it denied defendant's motion; (2) defendant's vandalism case should not have been deemed a violation of probation due to his mental illness; and (3) the trial court had the discretion and authority to impose a lower sentence and was not obligated to order execution of the suspended sentence.

## FACTUAL AND PROCEDURAL HISTORY

Laquinta Stewart testified that she resided at a motel in Hollywood with defendant on January 16, 2011.[2] They argued, and the argument became violent. Defendant slapped Stewart twice, and she began fighting him. Defendant overpowered her and choked her until she lost consciousness. After defendant awakened Stewart by splashing water on her, they continued arguing. Stewart left for 10 minutes and returned,

---

[1]   All further references to statutes are to the Penal Code unless otherwise stated.

[2]   The facts regarding defendant's offense are taken from the transcript of his preliminary hearing.

whereupon the argument continued. Stewart tried to leave again, and defendant punched her in the face. She ran away, and defendant caught up with her. He began shaking her back and forth, saying she was trying to send him to jail. In the motel lobby, defendant pushed a luggage cart into Stewart's back. The police arrived, and Stewart spoke with two officers.

As noted, defendant was granted probation after pleading no contest. His probation was revoked when he failed to appear to present proof of enrollment in domestic violence classes. Defendant was reinstated on probation and ordered to enroll in the class. Defendant failed to appear for a subsequent court date regarding a possible violation of probation, and his probation was revoked. When defendant appeared on June 29, 2012, it was revealed that defendant was terminated from the domestic violence program after having completed 17 of 52 classes. Defendant's probation was reinstated, and he was ordered to provide proof of reenrollment on the next court date. Defendant failed to appear, and his probation was revoked on October 30, 2012.

On November 1, 2012, the district attorney filed a motion requesting revocation of probation due to defendant's having been charged with felony vandalism. At approximately 6:25 p.m. on October 31, 2012, defendant, who was naked, walked into the Elite Ambulance Dispatch Center at 2065 Venice Boulevard in Los Angeles. He grabbed some candy from a desk and threw it at a dispatcher. Defendant next threw a monitor and a laptop at the dispatcher. Defendant picked up a five-gallon water jug and threw it at a vending machine, shattering the glass. Defendant entered the supply room and began throwing around gurneys and fire extinguishers. The dispatcher left the office and called 911. Defendant tried to fight with the dispatcher. Two witnesses arrived and defendant swung and hit one of the witnesses. The two witnesses tackled defendant and held him down. While they did so, defendant yelled threats at them. Police arrived and saw extensive damage to the office and items within the office. The damage was estimated at approximately $1,000.

On November 20, 2012, defendant waived his right to a revocation hearing and admitted violating probation. The court found defendant in violation of probation for

3

failure to complete the domestic violence program, failure to obey all laws, and failure to report to probation. The court terminated probation and sentenced defendant to serve seven years in prison. At defendant's request, the court recommended placement in a facility where defendant could enroll in a dual-diagnosis program.

On February 20, 2013, and on April 9, 2013, defendant filed a notice of motion to withdraw his admission. His attorney's declaration indicated that defendant stated he did not know what he was doing when he entered the admission, and he requested an opportunity to be heard on the issue of his competency at the time of his admission.

Defendant's motion was heard, argued, and denied on May 29, 2013. The trial court granted defendant's request for a certificate of probable cause.

## DISCUSSION

### I. Denial of Defendant's Motion to Withdraw His Admissions

#### A. *Defendant's Argument*

Defendant contends that the trial court erred in failing to order a hearing on the question of his sanity, despite having "many reasons" to believe defendant was not sane at the time he pleaded to the charge and also at the time the sentence was executed.

#### B. *Proceedings Below*

Defendant accepted the People's offer of a suspended sentence of seven years and changed his plea to no contest. He stated that he understood the plea agreement, and he was pleading freely and voluntarily because he felt it was in his best interest to do so. When the prosecutor explained his rights and asked if he understood and gave up his rights, defendant answered "Yes, Ma'am" to each question posed to him. The trial court asked him an additional question, i.e., whether he had taken any drugs or other substances that might interfere with his ability to understand what was happening, and defendant answered, "No, sir." Defendant then entered his plea to the charge and special allegation.

At the taking of defendant's admission at the probation violation hearing, the following exchange occurred:

"Ms. Beckstrand [Deputy District Attorney]: Mr. Adams, it's alleged you violated the terms and continues [*sic*] of probation by participating in new criminal conduct.

4

Misdemeanor vandalism I believe is pending against you. Also, you failed to report to your probation officer as ordered, and you failed to complete your domestic violence classes as ordered. Regarding those allegations, you have the right to have a formal hearing. At the hearing, you would have a right to confront and cross-examine any witnesses who would testify against you. You could bring witnesses to court for free through the subpoena power of the court if you wanted to and present a defense at the hearing if you chose to. Do you understand all of those rights?

"The Defendant: (Inaudible response.)

"Ms. Beckstrand: You have to answer out loud.

"The Defendant: I understand.

"Ms. Beckstrand: You understand your rights, Mr. Milton [*sic*]?

"The Defendant: My name is John Adams, gracious gift to God. Yes, I understand that.

"Ms. Beckstrand: Do you give up those rights?

"The Defendant: Of course I do.

"Ms. Beckstrand: You also have a right to remain silent. No one can force you to say anything that would incriminate yourself. If you admit the violations today, you will be incriminating yourself. Based upon your admission, the court will find the violations to be true, and no other evidence would be presented. Do you understand that right?

"The Defendant: Yes.

"Ms. Beckstrand: Do you give that right up?

"The Defendant: Of course I do.

"Ms. Beckstrand: As to the allegations that you failed to abide by the terms and conditions of your probation in case BA380172 in that you participated in new criminal conduct, misdemeanor vandalism, failed to report to your probation officer as ordered and failed to complete your domestic violence class, do you admit those violations?

"The Defendant: Uh-huh.

"Ms. Beckstrand: You have to answer yes or no.

"The Defendant: Well, first of all, there's reasons why I failed to complete my classes and did all that, but, of course, the court doesn't want to hear that. So I'm going to say

yes. I'm going to agree with everything you're saying. That's just passions. It's not anger.

"Ms. Beckstrand: You understand you have the right to have a hearing?

"The Defendant: I understand. That's why I took the seven years. Just get it out of my hair.

"Ms. Beckstrand: So you admit those violations?

"The Defendant: Yes, I guess they are admittible [*sic*].

"Ms. Beckstrand: I'm sorry?

"The Defendant: They are admittible. Whatever you say.

"Ms. Beckstrand: Is that sufficient for the court?

"The Court: Well, sir, it's alleged further that you engaged in this new criminal conduct by throwing objects and destroying a vending machine—

"The Defendant: Yeah.

"The Court: —and other items inside of a hospital. Do you admit that?

"The Defendant: Yeah, that's admittible.

"The Court: All right. You may proceed.

"Ms. Beckstrand: Counsel, do you join in the waivers and admission and stipulate to a factual basis based upon the documents filed, the in lieu of in this matter?

"Mr. Fenske [defense counsel]: Yes, pursuant to *People v. West*.

"The Court: The court finds the defendant has expressly, knowingly, understandingly and intelligently waived his constitutional rights. The court further finds that his admissions are freely and voluntarily made with an understanding of the nature and consequences thereof and that there is a factual basis for the admissions as contained in the probation officer's report as well as the arrest report that accompanied the People's motion requesting revocation of probation. The court accepts the defendant's admission and finds him in violation of probation."

At the hearing on defendant's motion to withdraw his admission, the following exchange occurred:

6

"Mr. Fenske [defense counsel]: . . . I think the reality of the situation is such that, essentially, without having the opportunity to actually have Mr. Adams examined, since he's been an out-of-county custody, I haven't had the opportunity to have him examined by a psychologist to see if his mental state might have been affected at the time of the plea. I could tell, in my interactions with him since that date—I can tell he's definitely more stable and communicating more effectively than he was at the time of the proceeding. And I think we're just asking the court, in the interest justice, pursuant to Penal Code section 1018, to make the finding that this question wasn't—given the nature of the proceeding, probation violation hearing setting, and the court's indicated to just impose a sentence that had been previously suspended and amount of time—times we had issues in terms of his performance under that probation, you know, led us to perhaps make a hastier decision in terms of how to proceed than was appropriate given the situation.

"The Court: I don't think there's a sufficient showing made by the defense to warrant the relief requested which is to withdraw the admission. According to what I've seen, he has several felony convictions. There's no indication in the file that he was ever found incompetent. That issue may have been investigated by counsel at some point, but it was not brought to this court's attention in a timely manner. So the motion is denied."

### C. Relevant Authority

Section 1368, subdivision (a) provides, in pertinent part: "If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent."

"A person cannot be tried or adjudged to punishment while that person is mentally incompetent." (§ 1367, subd. (a); see also *Drope v. Missouri* (1975) 420 U.S. 162, 172.) "Absent substantial evidence of a defendant's incompetence, 'the decision to order [a competency hearing pursuant to section 1368] [is] left to the court's discretion.'" (*People v. Panah* (2005) 35 Cal.4th 395, 432.) A court abuses its discretion only if its ruling falls

7

outside the bounds of reason (*People v. Ochoa* (1998) 19 Cal.4th 353, 408), and "[a] trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial. [Citations.] The failure to declare a doubt and conduct a hearing when there is substantial evidence of incompetence, however, requires reversal of the judgment of conviction. [Citations.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 847.)

"Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations. [Citations.] But to be entitled to a competency hearing, 'a defendant must exhibit more than . . . a preexisting psychiatric condition that has little bearing on the question . . . whether the defendant can assist his defense counsel.' [Citations.]" (*People v. Rogers*, *supra*, 39 Cal.4th at p. 847.)

Plea bargaining is a critical stage of trial proceedings. (*Missouri v. Frye* (2012) ___ U.S. ___ [132 S.Ct. 1399, 1407-1408.) As such, there is no significant difference in the evaluation of a defendant as to his competency to stand trial versus his competency to assess a plea offer from the prosecution. (*Godinez v. Moran* (1993) 509 U.S. 389, 399 [the same level of competence is required for one who chooses to plead not guilty as for one who pleads guilty].) Thus, a defendant who pleads guilty must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him'" in order to be deemed competent to plead guilty. (*Dusky v. United States* (1959) 362 U.S. 402; accord, *Drope v. Missouri*, *supra*, 420 U.S. at p. 172.)

A denial of a motion to withdraw a plea will not be disturbed on appeal absent a showing of an abuse of discretion. (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.) "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." (*Ibid*.)

### D.  No Abuse of Discretion or Error

We disagree with defendant that there was substantial evidence of his lack of mental competence within the meaning of section 1368. The record is devoid of any

8

evidence that defendant was at any time unable to understand the nature of the proceedings or to assist his counsel in a rational manner.

At the outset, defendant challenges for the first time his plea of no contest to the substantive offense of corporal injury to a cohabitant. Defendant cannot raise this issue for the first time on appeal. After entering his plea on May 26, 2011, and being placed on probation, defendant never sought to withdraw his plea until the present time, well beyond the six-month limitation set out in section 1018. (*People v. Miranda* (2004) 123 Cal.App.4th 1124, 1133-1134 [limitation for motions to withdraw a plea following a grant of probation is mandatory and not subject to waiver].) In his motion to withdraw his admission of the probation violation, defendant made no mention of being incompetent to enter into his "no contest" plea. At the hearing in which he admitted the probation violation, he did not ask to withdraw his plea. Moreover, the trial court made no ruling regarding the validity of defendant's original plea, and appeal on this basis is not well taken. (*People v. Clark* (1993) 5 Cal.4th 950, 988, fn. 13 ["When a party does not raise an argument at trial, he may not do so on appeal"], disapproved on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

By way of argument on the issue of his alleged incompetence to admit the probation violation offense, defendant first points out that he fought with Stewart on the sole provocation that she did not want to eat. He adds that he had already been convicted in eight drug-related cases, which indicated he had a long history of drug abuse "and possible mental issues." He recounts his bizarre behavior at the ambulance service and notes that the officers requested an additional unit because defendant "appeared to be under the influence of narcotics or suffering from a mental illness." When brought to court, defendant presented a letter to the district attorney requesting a dual-diagnosis program. "Friends" of defendant contacted his attorney and told him they believed defendant was mentally ill at the time of his admission. The attorney contacted defendant, who confirmed in a letter that he did not know what he was doing when he entered the admission and wished to be heard on the issue of his competency. Defendant concludes, apparently based on all of the above, that the failure of the court to order a

9

hearing on the issue of his sanity in accordance with section 1368 denied him due process of law.

We disagree with defendant and conclude there was no substantial evidence on the record to justify a finding of incompetence. A defendant is presumed competent unless a preponderance of the evidence shows otherwise. (§ 1369, subd. (f); see *People v. Ramos* (2004) 34 Cal.4th 494, 507.) "Section 1368, subdivisions (a) and (b), respectively, require the trial court to initiate proceedings in order to determine a defendant's present sanity if 'a doubt arises in the mind of the judge as to the mental competence of the defendant' or '[i]f counsel informs the court that he or she believes the defendant is or may be mentally incompetent.'" (*Ramos*, at p. 507.) The colloquy of defendant's admission, recited *ante*, gave no indication he was mentally incompetent. Indeed, defendant appeared to want to explain to the court the reasons for his behavior but he chose not to. "Evidence regarding past events that does no more than form the basis for speculation regarding possible current incompetence is not sufficient. [Citation.]" (*People v. Hayes* (1999) 21 Cal.4th 1211, 1281; see also *People v. Ramirez* (2006) 39 Cal.4th 398, 431.) "If a defendant presents merely 'a litany of facts, none of which actually related to his competence at the time of sentencing to understand the nature of that proceeding or to rationally assist his counsel at that proceeding,' the evidence will be inadequate to support holding a competency hearing. [Citation.] In other words, a defendant must exhibit more than bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel. [Citations.]" (*Ramos*, at p. 508.)

It is true that defendant had a history of drug-related offenses. Nevertheless, the record shows that defendant's probation report, prepared at the time he pleaded no contest, stated that there was "no indication or claim of significant physical/mental/emotional health problem." As the trial court noted, there was no record of defendant's having been found incompetent at any time during proceedings on his several felony convictions. There was no evidence he had ever been committed or evaluated for mental illness. Defense counsel's declaration in support of the motion

10

names no incidents of behavior demonstrating a lack of competence. Defense counsel does not assert he observed signs of incompetence at the taking of the admission proceeding. At the hearing on his motion, defendant's counsel told the court it was a female friend of defendant's who had informed counsel she did not believe defendant was competent at the time the admission was made. This friend was not present when defendant admitted the probation violation, and no information was provided as to her qualifications for making determinations about defendant's mental health. The only evidence presented regarding defendant's mental state was that counsel discerned that defendant was communicating more effectively than he had been at the time of the admission.

In sum, there was no showing that defendant suffered from a mental condition to the degree that the trial court was obliged to declare a doubt about his competence prior to accepting his admission to the probation violation. There was no error.

## II. Mental Illness and Vandalism Offense as Violation of Probation

### A. Defendant's Argument

Defendant argues that, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, citing *People v. Drew* (1978) 22 Cal.3d 333, 345. He asserts that he did not freely choose to violate the law.

### B. No Evidence of Insanity

Defendant's arguments indicate he is now asserting an insanity defense to the vandalism charge. (See *People v. Drew*, *supra*, 22 Cal.3d at p. 336 [discussing an "update" to the test for mental incapacity as a criminal defense in California].) The defense of not guilty by reason of insanity "shall be found by the trier of fact only when the accused person proves by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." (§ 25, subd. (b); *People v. Hernandez* (2000) 22 Cal.4th 512, 520-521.) In the instant case, there was no finding that defendant was either sane or insane by any trier of fact.

11

Defendant cites cases, such as *People v. Drew*, dealing with sanity determinations, although defendant offered no defense based on insanity. We have already determined that the trial court did not abuse its discretion in making the finding that defendant was not incompetent at the time he admitted the probation violation. Although defendant acted in a bizarre manner at the ambulance service, there was no evidence he was insane at the time. Given his history of drug use, it is far more likely he was under the influence. The elements of a defense of voluntary intoxication are not identical to a defense of not guilty by reason of insanity and these defenses are not co-extensive or interchangeable. A defense of not guilty by reason of insanity can be found "'only when the accused person proves by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense.'" (*People v. Lawley* (2002) 27 Cal.4th 102, 169-170, fn. omitted.) Defendant failed to present any evidence that he suffered from this type of incapacity.

Moreover, the vandalism offense was not defendant's only violation of probation. He failed to report to his probation officer as required, and he failed to complete his domestic violence program, despite being given several opportunities to do so after his repeated failures to comply.

Defendant's argument is without merit.

## III. Sentencing

### A. Defendant's Argument

Defendant asserts that when the court became aware of defendant's mental issues, it would have been within the court's jurisdiction and authority to mitigate the state prison term of seven years downward to some other form of punishment, such as a dual-diagnosis program, where defendant's mental and drug-related issues could have been addressed.

### B. Relevant Authority

When challenging a discretionary sentencing choice on appeal, "the burden is on the party attacking the sentence to clearly show that the sentencing decision was

12

irrational or arbitrary. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978; *People v. Weaver* (2007) 149 Cal.App.4th 1301, 1318.) "'In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*Alvarez*, *supra*, 14 Cal.4th at pp. 977-978.)

### C. *No Abuse of Discretion*

At the outset, we note that defendant did not object to execution of the suspended sentence at the proceeding below. Allegations of sentencing error cannot be raised for the first time on appeal where the trial court exercised its discretion in imposing sentence. (*People v. Tillman* (2000) 22 Cal.4th 300, 302-303.)

Additionally, "[u]nless the record affirmatively shows otherwise, a trial court is deemed to have considered all relevant criteria in deciding whether to grant or deny probation or in making any other discretionary sentencing choice. [Citation.]" (*People v. Weaver*, *supra*, 149 Cal.App.4th at p. 1313.) Defendant's sentence of seven years was imposed pursuant to a plea bargain that he and the prosecutor agreed upon. The trial court did not abuse its discretion in carrying out that plea bargain. Accordingly, the basis for the sentence was far from arbitrary or irrational. Moreover, contrary to defendant's assertion, the trial court recommended that defendant be placed in a dual-diagnosis program, as defendant requested.

Defendant's claim of sentencing error is without merit.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:

CHAVEZ, J.                    FERNS, J.*

_____
*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13